## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND,                    )
MICHAEL W. BUCKNER,                    )
B.V. HYLER                             )
and STEVEN F. SCHAAB as                )
TRUSTEES of the UNITED MINE            )
WORKERS OF AMERICA 1974                )
PENSION TRUST,                         )
                                       )
     Plaintiffs,                     )
                                       )
     v.                              )    CASE NO. 1:07-cv-00490
                                       )    Assigned to: Friedman, Paul L.
FREEMAN UNITED COAL                    )    Assign Date: 3/14/07
MINING COMPANY, *et al.*,              )    Description: Holland v. Freeman United
4440 Ash Grove, Suite A                )
Springfield, IL 62707                  )
                                       )
     Defendants.                     )

## MOTION FOR STAY, OR IN THE ALTERNATIVE, REQUEST FOR EXTENSION OF TIME

Defendant, Freeman United Coal Mining Company ("Freeman"), by counsel, moves this Court to enter an Order staying this matter solely as it relates to Freeman or, alternatively, granting Freeman an additional 30 days until May 9, 2007 to file an answer or otherwise respond to the Complaint.

As set forth in the accompanying memorandum, a stay is appropriate because of parallel proceedings pending in the United States District Court for the Central District of Illinois. Freeman's response to this lawsuit will depend, in part, on the outcome of motions pending before the district court in Illinois.

Freeman's counsel has discussed this motion with plaintiffs' counsel. Plaintiff opposes the request for a stay but does not oppose an extension of time to respond to the Complaint until May 1, 2007.

In support of this motion, Freeman invites the Court's attention to the accompanying memorandum. An Order granting a stay until such time as the district court in Illinois rules on the motions pending before it is attached with directions that the parties are to advise the Court of the outcome of those motions so that the status of this matter against Freeman can be then addressed.

Respectfully submitted:

/s/ Michael W. Robinson
Michael W. Robinson
Bar No. 437979
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
(703) 760-1600
(703) 821-8949 (facsimile)
mwrobinson@venable.com

Paul M. Smith
Bar No. 358810
Jenner & Block LLP
601 13th Street, N.W.
Washington, D.C.  20005
(202) 639-6000
psmith@jenner.com
jamunson@jenner.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion to Stay and Memorandum in Support was served, via first class mail, postage prepaid, this 9th day of April, 2007 on:

> Julia Penny Clark
> DC Bar No. 269609
> Charlotte Garden
> D.C. Bar No. 489040
> BREDHOFF & KAISER PLLC
> 805 Fifteenth Street, NW
> Suite 1000
> Washington, DC 20005
> Telephone: 202-842-2600
>
> David W. Allen
> General Counsel
> D.C. Bar No. 81638
> Larry D. Newsome
> Associate General Counsel
> D.C. Bar No. 254763
> Christopher F. Clarke
> Senior Assistant General Counsel
> D.C. Bar No. 441708
>
> UMWA Health & Retirement Funds
> Office of the General Counsel
> 2121 K Street, NW
> Washington, DC 20037
> Telephone: 202-521-2238
>
> *Attorneys for Plaintiffs*

/s/ Michael W. Robinson

MC1DOCS1\224419

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL H. HOLLAND,** | ) |
| **MICHAEL W. BUCKNER,** | ) |
| **B.V. HYLER** | ) |
| **and STEVEN F. SCHAAB as** | ) |
| **TRUSTEES of the UNITED MINE** | ) |
| **WORKERS OF AMERICA 1974** | ) |
| **PENSION TRUST,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CASE NO. 1:07-cv-00490** |
| | ) **Assigned to: Friedman, Paul L.** |
| **FREEMAN UNITED COAL** | ) **Assign Date: 3/14/07** |
| **MINING COMPANY, et al.,** | ) **Description: Holland v. Freeman United** |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR STAY, OR IN THE ALTERNATIVE, REQUEST FOR EXTENSION OF TIME

This Court should stay this action solely as to the claim against Freeman United Coal Mining Company ("Freeman") while the United States District Court for the Central District of Illinois decides whether first-filed parallel litigation pending in that court is to proceed there or be transferred to this Court. That decision will obviously impact whether, and how, this action against Freeman should proceed. If the Illinois federal court proceeds with the parallel litigation, plaintiffs' claim against Freeman can, and should be, asserted in that action. If, on the other hand, that court decides to transfer the matter, questions of consolidation and whether the action against Freeman should proceed separately from the action against the other eight defendants then must be addressed. Because of this uncertainty, this action against Freeman should be stayed until it is clear what further action the Court may

need to take.  In the alternative, if the Court does not stay this action as to

Freeman, Freeman respectfully requests an additional 30 days to file an

answer or otherwise respond to the Complaint

### FACTS

This action is brought by the UMWA 1974 Pension Trust against nine

coal mining companies that have allegedly failed to pay contributions to the

Pension Trust.  Freeman's obligation to make contributions, if any, is based

either on a collective bargaining agreement negotiated by Freeman with the

United Mine Workers of America ("UMWA") in 2002 and effective January 16,

2003 ("2003 Freeman Agreement"), or Freeman's participation in earlier

collective bargaining agreements with UMWA that were negotiated by the

Bituminous Coal Operators Agreement ("BCOA").

The Pension Trust contends that the earlier agreements contain a

provision commonly referred to as an "Evergreen" clause that obligates

Freeman to make contributions at rates set forth in a new collective bargaining

agreement between the BCOA and the UMWA.  Freeman denies this obligation.

When the UMWA and the Pension Trust asserted that Freeman was obligated

to make contributions at rates set in the 2007 BCOA collective bargaining

agreement, Freeman filed an action in the Central District of Illinois against the

UMWA and the Pension Trust seeking a declaration of its rights and obligations

under its 2003 Freeman Agreement and any alleged obligation to make

contributions as a result of the Evergreen clause.  That action is <u>Freeman Coal</u>

<u>Co. v. United Mine Workers, et al.</u>, No. 07-CV-03048-JES-CHE (complaint

attached).  Freeman also sought alternative relief against the BCOA; it sought

2

damages for BCOA's breach of duties to Freeman in using its role negotiating as a purported multi-employer bargaining unit to give a Freeman competitor a competitive advantage by negotiating contribution rates that, if applicable to Freeman, would be more unfavorable to Freeman than its competitor.

This action was filed one month *later*. The defendants in the Illinois federal case then moved to dismiss or to transfer the Illinois action to this Court pursuant to §1404 for consolidation with this action. Freeman's response is due on April 16, 2007. Under Central District of Illinois Rule 7.1(B)(3), no reply to the response is permitted.

## **ARGUMENT**

When two actions involving the same parties with overlapping issues are pending in two separate district courts, the "first-filed" action typically has precedence. *See* 17A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4247, at 118-24 (2d ed. 1988). In particular, courts recognize that the first-filed action should be the court that decides which of the two actions will proceed. *See Moore's Federal Practice*, §111.13[1][o]; *Affinity Memory & Miero v. K&A Enterprises*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998); *Ontel Prod., Inc. v. Project Strategies Corp.,* 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995).

In this situation, the district court in Illinois should decide which of the two cases should proceed. That approach is particularly applicable here because of the pending motion to transfer that action to this Court. Of course, whether an action should be transferred is to be decided by the putative transferor court. *See Sundstrand Corp. v. American Brake Shoe Co.*, 315 F.2d

3

273, 276 (7th Cir. 1963); *Facen v Royal Rotterdam Lloyd S.S. Co.*, 12 F.R.D. 443 (S.D.N.Y. 1952). That decision will impact both proceedings.

The Court has discretion to stay this case until the Illinois district court decides the preliminary issue before it. *See Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants.") *See e.g., IBT/HERE Employee Representatives Council v. Gate Gourmet Div. Americas*, 402 F. Supp. 2d 289 (D.D.C. 2005) ("Trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere").

Whether to grant a stay is an "exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 255. Here, circumstances weigh heavily in favor of a stay of this action pending resolution of the motions in the Illinois district court. The Illinois action seeks a declaration of rights both with respect to Freeman's obligations to make contributions under its 2003 Freeman Agreement, as well as any obligations under the so-called "Evergreen Clause" relied on by the Pension Trust in this action. Thus, both actions will necessarily involve an interpretation of Freeman's obligations under that clause. When the same parties are litigating the same issues in two separate fora, a stay pending the potential consolidation of the matters is proper. *National Shopmen Pension Fund v. Folger Adams Security, Inc.,* 274 B.R. 1, 3 (D.D.C. 2002) ("Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or the

4

parties' best interests regarding time, cost and effort.") *See also, Aetna U.S. Healthcare, Inc. v. Hoechts Aktiengesellschaft,* 48 F. Supp. 2d 37, 43 (D.D.C. 1999) (granting motion for stay pending resolution of motion to transfer and consolidate based upon potential for comment and overlapping issues in cases.); *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, §3866* (1986).

Additionally, it is logical to stay this action because defendants are requesting a transfer for purposes of consolidating the Illinois action with this action.  Procedurally, the request for a transfer must be decided, of course,  by the district court in Illinois.  If the Illinois action is transferred, this Court will have to decide whether consolidation is proper and, more importantly, whether the action against Freeman should be severed from the claims the Pension Trust has filed against the other eight defendants.  Freeman's defenses and claims raise different issues and include different parties; the Court may decide that even if the Illinois action is consolidated with this action, the claims involving Freeman should proceed separately from the claims against the eight other defendants.  If Freeman must proceed here as well, it must assert its claims and defenses and raise issues that may be premature or unnecessary for the Court to consider.  A clearer picture of the status of the case and the issues to be addressed will emerge following a ruling by the Illinois district court.  Thus, it is in the interest of judicial economy to stay this action against Freeman until the Illinois Court rules on the motion to transfer that action. *See Fund for Animals v. Norton,* 352 F. Supp. 2d 1, 2 (D.D.C. 2005) (ordering case stayed pending the ruling of the Wyoming federal court on defendant's

associated motion to transfer a related case.); *see also Sevel v. AOL Time Warner, Inc.,* 232 F. Supp. 2d 615, 616 (E.D. Va. 2002) (staying proceedings until the MDL panel decides motion to transfer or to consolidate avoids confusion and duplication of effort).

## **CONCLUSION**

For the reasons stated above, the Court should stay the action against Freeman or, in the alternative, the Court should grant Freeman an additional 30 days to file an answer or otherwise respond to the Complaint.

Respectfully submitted:

/s/ Michael W. Robinson
Michael W. Robinson
Bar No. 437979
Venable LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
(703) 760-1600
(703) 821-8949 (facsimile)
mwrobinson@venable.com

Paul M. Smith
Bar No. 358810
Jenner & Block LLP
601 13th Street, N.W.
Washington, D.C. 20005
(202) 639-6000
psmith@jenner.com

MC1DOCS1\224247

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| **FREEMAN UNITED COAL MINING COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO.** ___07-3048___ |
| ) | |
| **UNITED MINE WORKERS OF AMERICA,** ) | **EQUITABLE RELIEF SOUGHT** |
| ) | |
| **and** ) | |
| ) | |
| **BITUMINOUS COAL OPERATORS' ASSOCIATION, INC.** ) | |
| ) | |
| **and** ) | |
| ) | |
| **UNITED MINE WORKERS OF AMERICA 1974 PENSION FUND,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MICHAEL H. HOLLAND, MICHAEL W. BRUCKNER, STEVEN F. SCHAAB AND B.V. HYLER in their Capacity as Trustees of the United Mine Workers of America 1974 Pension Fund,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Freeman United Coal Mining Company ("Freeman"), by its

attorneys Jenner & Block LLP and Venable LLP, files this Complaint

seeking declaratory and other alternative relief, including damages.

## NATURE OF THE ACTION

1.     Freeman brings this action to obtain a declaration that it is
not obligated to contribute to the United Mine Workers of America
("UMWA") 1974 Pension Plan ("1974 Plan") at the exorbitant rate recently
set by defendant Bituminous Coal Operators' Association ("BCOA"); or in
the alternative, to recover damages from BCOA for negotiating unfair and
unreasonable 1974 Plan contributions in violation of its duties of good
faith and fair dealing to Freeman.  As more fully described below, BCOA
is a purported multi-employer bargaining unit which is now dominated
solely by Consolidation Coal Company and its affiliates ("Consol").  This
action arises because, under the guise of a so-called National
Bituminous Coal Wage Agreement ("NBCWA"), BCOA unilaterally and
without notice to Freeman has negotiated an unprecedented increase in
pension benefit contributions that was not required by the financial
condition of the 1974 Plan and was intended instead to be borne
disproportionately by Consol's competitors, including Freeman.  The
purpose of BCOA and Consol's scheme was to chain Consol's
competitors, including Freeman, to an oppressive benefit cost structure
and to an overwhelming escalation in pension plan withdrawal liability,
in order to degrade Freeman's ability to compete with Consol.

**PARTIES**

2.    Freeman is a corporation organized under the laws of Delaware, with its principal place of business in Springfield, Illinois.

3.    The UMWA is an unincorporated association and labor organization, as defined in the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et seq., which conducts business in this District and represents members, including employees of Freeman, in this District.

4.    The BCOA is a corporation organized under the laws of the District of Columbia. This Court can exercise jurisdiction over BCOA pursuant to Section 502(e)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(2), and 735 Illinois Compiled Statutes 5/2-209 (a)(1), (a)(7), and (c).

5.    The 1974 Plan is a qualified employee benefit plan under ERISA, 29 U.S.C. § 1001 et seq., organized to provide certain pension benefits to members of the UMWA. This Court can exercise jurisdiction over the 1974 Plan pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and 735 Illinois Compiled Statutes 5/2-209 (a)(1), (a)(7), and (c).

6.    Michael H. Holland, Michael W. Bruckner, Steven F. Schaab and B.V. Hyler are Trustees of the UMWA 1974 Pension Fund. This Court can exercise jurisdiction over the Trustees of the 1974 Plan

pursuant to Section 502(e)(2) of ERISA and 735 Illinois Compiled Statutes 5/2-209 (a)(1), (a)(7), and (c).

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, Section 301 of the LMRA, 29 U.S.C. § 185, and Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).  The Court is authorized to enter declaratory relief pursuant to 28 U.S.C. § 2201.

8.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action are substantially connected to this District.  Venue is also proper pursuant to Section 502 (e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

9.     This case is properly filed in the Springfield Division because Freeman is located in Springfield, Illinois and the claim arose in this Division.

## FACTS

10.     Freeman mines coal in the Illinois Basin at two mines located in Macoupin County, Illinois known as the Crown II and Crown III mines.

11.     Freeman's hourly workforce at the Crown II and III mines are union employees represented by the UMWA.

12.     BCOA is a corporation that purports to act as a multi-employer bargaining unit of bituminous coal mining companies.  At one time, BCOA had approximately 270 unionized coal companies as

4

members, including Freeman. Now BCOA is dominated and controlled by one company, Consol.

13.    From approximately 1950 until approximately 2002, BCOA acted as the principal collective bargaining forum for unionized coal operators. Over this period, BCOA negotiated directly with the UMWA for a series of national agreements titled "National Bituminous Coal Wage Agreements" — commonly referred to in the industry as "NBCWAs." These agreements would be negotiated for and apply to all BCOA multi-employer bargaining unit member companies.

14.    As the negotiator of these national agreements, BCOA owed contractual and common-law duties to negotiate fairly on behalf of all of its members, to further the interests of all of its members, and to avoid favoring the interests of one member over the interests of other members who would be bound by the agreements negotiated by BCOA.

15.    Through collective bargaining, the BCOA and the UMWA created certain pension plans, including the 1974 Plan, for UMWA members that would be funded by contributions from coal operators who were parties to those agreements.

16.    The 1974 Plan was initially created in 1976 by spinning off a portion of assets from the UMWA Welfare and Retirement Fund of 1950 after the passage of ERISA. The 1974 Plan provides pension benefits for qualified beneficiaries (and their eligible dependents) who retired after December 30, 1975.

17.    In accordance with the equal representation requirements of Section 302 of the LMRA, UMWA and BCOA each appoint two trustees of the 1974 Plan. The UMWA has appointed Michael H. Holland and Michael W. Buckner as trustees, and the BCOA has appointed Steven F. Schaab and B.V. Hyler as trustees.

18.    In addition to the 1974 Plan's trustees, certain administrative duties are performed for the 1974 Plan by the UMWA Health and Retirement Funds ("Funds"). The Funds are headquartered in Washington, D.C.

19.    The 1974 Plan includes the 1974 Pension Trust ("1974 Trust"). The 1974 Trust enumerates the responsibilities and duties of the trustees and the administration of the 1974 Trust. The 1974 Trust has been amended several times since its creation. In 1978, the 1974 Trust was amended to include a clause referred to as the "Evergreen Clause," which reads as follows:

> Any employer who employed any participant eligible for coverage under, or who received or receives benefits under, the 1974 Pension Plan, or any Employer who was or is required to make, or who has made or makes contributions to the 1974 Pension Plan and Trust, is obligated and required to comply with the terms and conditions of the 1974 Pension Plan and Trust, as amended from time to time, including, but not limited to, making contributions required under the national Bituminous Coal Wage Agreement of 1978, as amended from time to time, and any successor agreements thereto, including, but not limited to, the National Bituminous Coal Wage Agreement of 2002.

20.    Beginning in approximately 1978 and continuing over subsequent years, numerous coal operators withdrew from BCOA. These

withdrawing coal operators then negotiated independently and directly
with UMWA for individual collective bargaining agreements that would
apply only to the operator at the bargaining table.

21.     Freeman withdrew from BCOA in 1997.  Freeman
subsequently negotiated separate collective bargaining agreements with
the UMWA in 1998 and 2003.  The 2003 Freeman Agreement expires in
2008.

22.     The 2003 Freeman Agreement includes a clause commonly
referred to in the industry as a "Guarantee Clause."  This clause makes
provision for future contributions to supplement the 1974 Plan in the
event additional cash is needed to fund guaranteed benefits.  The
Guarantee Clause set forth in the 2003 Freeman Agreement states:

> Notwithstanding any other provisions in this Agreement the
> Employers participating in the 1950 Pension Fund and the
> 1974 Pension fund hereby agree to fully guarantee the
> pension benefits provided by these Funds during the term of
> this Agreement.
>
> In order to fully fund these guaranteed benefits, the BCOA
> may increase, not decrease (except as provided in Section
> (d)(1)), the rate of contributions to be made to the 1950
> Pension Fund and the 1974 Fund during the term of this
> Agreement.  These contributions, which may be adjusted
> from time to time, shall be made by Freeman during the
> term of this Agreement.

23.     At the time Freeman negotiated and agreed to the 2003
Agreement, the contribution rate for both the 1950 and 1974 Plans was
$0.  Thus, Freeman was not required to make any contributions to either
Plan.

24. At the time Freeman negotiated and agreed to the 2003 Agreement, BCOA was still a multi-employer bargaining unit that represented companies employing more than 50% of the unionized workforce in the bituminous coal industry.

25. With over 77,000 beneficiaries, the 1974 Plan is well funded and has sufficient assets to provide for all benefits for the current year and many years to come. The 1974 Plan has sufficient assets to provide for all benefits for the term of the 2007 NBCWA. For the plan year ending June 30, 2006, the 1974 Plan reported about $6 billion in assets. During that plan year, the 1974 Plan spent approximately $584 million to provide benefits and cover administrative costs, but earned over $713 million in investment income. In addition, the Plan received another $725,000 in contributions during the 2006 plan year.

26. Beginning in 2002 and continuing through 2006, BCOA and the UMWA authorized a series of transfers of money from the 1974 Plan to another UMWA ERISA plan providing healthcare benefits to certain union members (referred to as the "1993 Plan"). These recent diversions of substantial assets from the 1974 Plan to the 1993 Plan show (1) that there was no concern with the adequacy of the 1974 Plan's assets, and (2) that any shortfall now claimed to exist was at least in part the result of these improper transfers.

27.   In 2002, BCOA negotiated a new NBCWA with UMWA for its members.  The contribution rates for the Funds remained at $0 in that agreement.

28.   At the time BCOA negotiated the 2002 agreement, BCOA was still a multi-employer bargaining unit that represented companies employing more than 50% of the unionized workforce in the bituminous coal industry.

29.   After 2003, additional members of BCOA withdrew from the association, leaving Consol as the sole member of BCOA. Since approximately 2006, BCOA has acted as nothing more than a mere instrumentality of Consol.  BCOA no longer acts on behalf of any association of coal operators.  Rather, it acts solely on behalf of Consol.

30.   In 2006, BCOA negotiated a new collective bargaining agreement with UMWA, the so-called 2007 NBCWA.  While this agreement remains denominated as a "national" agreement, it amounts to nothing more than an agreement between UMWA and Consol covering Consol's mining operations.  In negotiating the 2007 NBCWA, BCOA acted as a mere instrumentality of Consol.

31.   The 2007 NBCWA is not a successor agreement to the prior NBCWAs because, among other reasons, it was negotiated by and for the benefit of a single company and its affiliates, it was not negotiated by an actual multi-employer bargaining unit, and it is tantamount to a single company agreement with UMWA.

9

32.   Upon information and belief, Consol pays to BCOA all of the dues payments that finance BCOA's operations

33.   Upon information and belief, the Board of Directors of BCOA is exclusively controlled by officers and employees of Consol.

34.   Upon information and belief, Consol caused BCOA either directly or indirectly to use the services of B. V. Hyler, former Consol Human Resources official, and Dan Fasio, former General Counsel of Consol, to participate in the negotiation of the 2007 NBCWA.

35.   Upon information and belief, Consol officials Patricia Lang, Vice President Human Resources of Consol, and Peter B. Lilly, Chief Operating Officer of Consol, participated in the negotiation of the 2007 NBCWA.  In fact, Peter B. Lilly executed, on behalf of BCOA and on BCOA stationery, at least two letters of understanding that interpret and are part of the 2007 NBCWA.

36.   Upon information and belief, no employee of BCOA participated in the direct negotiation of the 2007 NBCWA.

37.   Upon information and belief, B. V. Hyler is a Trustee of the 1974 Plan and owes fiduciary duties to the plan's beneficiaries.  Mr. Hyler was also appointed by BCOA to negotiate the 2007 NBCWA which ultimately included drastic increases to the contributions to the 1974 Plan.  Mr. Hyler's conflicting roles may have compromised the negotiation of any contributions to the 1974 Plan.

10

38.   Notwithstanding the fact that the guaranteed benefits of the
1974 Plan were adequately funded without need for any additional
contributions, the 2007 NBCWA drastically increased the contributions
required to be made to the 1974 Plan.  The new agreement requires
contributions of $2.00 per man-hour worked.  Over the next four years,
the rate increases from $2.00 to $5.50 per man-hour worked.

39.   The 1974 Plan and the UMWA have demanded that Freeman
begin contributing to the 1974 Plan at the rates contained in the 2007
NBCWA.  By memorandum dated January 10, 2007, Lorraine Lewis,
Executive Director, UMWA Health and Retirement Funds stated:

> As a signatory to one or more NBCWAs from 1978 to 2002,
> you became an Employer subject to the terms of the UMWA
> 1950 and 1974 Pension Trusts [the Trusts).   Article X of the
> Trusts contains an 'Evergreen Clause' which requires
> Employers to continue to participate in, and contribute to,
> the Trusts and the current contribution rates even if you do
> not sign the NBCWA of 2007.  The current contribution rates
> to the ... 1974 Pension Trust [is] ... $2.00 per hour....
> Therefore you are obligated to contribute to the UMWA 1974
> Pension Trust at the rate of $2.00 per hour for hours worked
> beginning January 1, 2007 whether or not you sign the 2007
> NBCWA.

40.   The formula negotiated by BCOA, as an instrumentality of
Consol, imposes greater financial burdens on Freeman and other
similarly situated coal operators than on Consol.  Freeman mines coal
using a method known as room-and-pillar mining.  At its union
operations, Consol mainly utilizes a mining method known as longwall
mining.  Longwall mining requires substantially fewer man-hours to

mine a ton of coal than does room-and-pillar mining. Because
contributions under the 2007 NBCWA are paid on a per-hour-worked
basis, rather than a per-ton basis, and because room-and-pillar mining
requires substantially more man-hours to produce a ton of coal than
does longwall mining, the impact of the increase in the hourly
contribution rates will be substantially greater for Freeman than for
Consol. In other words, for each ton of coal produced, Freeman will have
to pay substantially larger 1974 Plan contributions than Consol.

41.    The formula negotiated by BCOA as an instrumentality of
Consol has no basis in law, is in breach of BCOA's express and implied
duties to Freeman, is in breach of the 2003 Freeman Agreement, and
gives Consol a significant unfair competitive advantage over Freeman and
other similarly situated coal operators.

### COUNT I
### (Declaratory Relief – Defendants UMWA, 1974 Plan and Trust, Trustees of 1974 Plan and Trust, and BCOA)

42.    Freeman incorporates the allegations of paragraphs 1
through 41 as if set forth in full.

43.    The 1974 Plan and Trust and the UMWA contend that
Freeman is obligated to make contributions to the 1974 Plan pursuant to
the formula set forth in the 2007 NBCWA. Defendants could bring a
coercive action against Freeman to enforce this alleged obligation under

Section 301 of the LMRA, 29 U.S.C. § 185 and/or Section 502 of ERISA, 29 U.S.C. § 1132.

44.     Freeman contends that it has no obligation to make the contributions sought by the 1974 Plan and Trust and the UMWA.

45.     Freeman is not required to make the contributions demanded by the 1974 Plan and Trust and the UMWA because:

(a)     The 2003 Freeman Agreement does not require Freeman to contribute at the rates contained in the 2007 NBCWA;

(b)     Under the 2003 Freeman Agreement, Freeman agreed to make contributions at rates set by BCOA only when additional contributions were necessary to fund guaranteed benefits during the term of the 2003 Freeman Agreement, and there is no such need;

(c)     Under the 2003 Freeman Agreement, Freeman agreed to make increased contributions at rates set only by a true multi-employer bargaining unit and, in this case, the rate of contributions was raised by an instrumentality of a Freeman competitor and not a true multi-employer bargaining unit;

(d)     The Evergreen Clause does not require Freeman to contribute at the rates contained in the 2007 NBCWA; and

(e)     The 2007 NBCWA is not a successor agreement to the 2002 NBCWA, the prior national agreement.

46.     The UMWA and the 1974 Plan and Trust have demanded that Freeman make the contributions to the 1974 Plan and their demand

13

exposes Freeman to litigation from other parties, including BCOA, and to potential additional penalties if Freeman does not acquiesce to the demands.

47.    An actual, justiciable controversy exists between the parties which the Court can resolve with finality by declaring the rights of the parties.

## COUNT II
## (Damages against BCOA)

48.    Freeman incorporates by reference the allegations in paragraphs 1 through 47 as if set forth in full.

49.    Count II is pled seeking alternative relief to the relief requested in Count I.

50.    BCOA had actual knowledge of the fact that the individual wage agreements agreed to by Freeman and other former BCOA members included identical "Guarantee Clauses" that tied contributions to the 1974 Plan to contribution rates agreed to by BCOA in negotiating true national agreements as a multi-employer bargaining unit.

51.    BCOA had actual knowledge of the fact that the "Evergreen Clause" included in the 1974 Trust might be used to tie contributions to the 1974 Plan to contribution rates agreed to by BCOA in negotiating true national agreements.

52.    BCOA owed duties of good faith and fair dealing to its former members, including Freeman, when negotiating provisions of the

14

purported national agreement that could impose legal obligations on its former members.

53.    If, when negotiating the provisions of a national agreement, BCOA had the power to bind Freeman, then BCOA was acting as Freeman's actual or apparent agent and owed Freeman duties, including the duty to act in good faith and not arbitrarily or capriciously or unreasonably.

54.    BCOA acted as a mere instrumentality of Consol in using the 2007 agreement as a means to gain for Consol competitive advantage over other coal producers who could be bound by the terms agreed to by BCOA.

55.    BCOA breached its duties to Freeman by, among other things:

(a) using the negotiation of the 2007 agreement as a means to give Consol a competitive advantage over Freeman and other similarly situated coal producers;

(b) negotiating terms regarding the contributions to the 1974 Plan that favored Consol over other coal producers that could be bound by BCOA's agreement;

(c) agreeing to drastically increased contribution rates when there was no objective need for increased contributions to fund the guaranteed benefits;

(d) agreeing to drastically increased contribution rates that were arbitrary and capricious and unreasonable; and

(e) appointing a negotiator for the 2007 agreement who served as a Trustee of the 1974 Plan and thus an interest in maximizing contributions to the Plan regardless of the impact on coal producers.

56.    If Freeman is obligated to make contributions to the 1974 Plan based on BCOA's 2007 Agreement, then Freeman has suffered damages stemming from BCOA's actions.

## PRAYER FOR RELIEF

WHEREFORE, Freeman respectfully requests that the Court enter judgment in its favor and against defendants as follows:

A.  Declaring that Freeman's non-payment of 1974 Plan contributions at the rates contained in the 2007 NBCWA does not constitute a breach of contract enforceable under Section 301 of the LMRA, 29 U.S.C. § 185.

B.  Declaring that Freeman's non-payment of 1974 Plan contributions at the rates contained in the 2007 NBCWA does not violate its obligations under Section 515 of ERISA, 29 U.S.C. § 1145.

C.  Declaring that Freeman is not obligated to contribute to the 1974 Plan at the rates contained in the 2007 NBCWA.

D.  Declaring that defendants' demand that Freeman pay at the 2007 NBCWA rates has no valid basis in either the 2003 Freeman Agreement or the terms of the 1974 Plan.

16

E. In the alternative, if Freeman is obligated to make contributions to the 1974 Plan based on the 2007 NBCWA, then awarding Freeman damages from BCOA in an amount to be determined at trial.

F. Granting Freeman all other appropriate relief that the Court deems just and appropriate.

Respectfully submitted,

FREEMAN UNITED COAL MINING COMPANY

By:  /s/ Susan C. Levy
        One of their attorneys

Susan C. Levy (*Lead Counsel*)
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel (312) 923-2772
Fax (312) 840-7772

Gregory J. Ossi
Michael W. Robinson
Venable LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
Tel (703) 760-1600
Fax (703) 821-8949

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND,                    )
MICHAEL W. BUCKNER,                    )
B.V. HYLER                             )
and STEVEN F. SCHAAB as                )
TRUSTEES of the UNITED MINE            )
WORKERS OF AMERICA 1974                )
PENSION TRUST,                         )
                                       )
    Plaintiffs,                     )
                                       )
    v.                              )    CASE NO. 1:07-cv-00490
                                       )    Assigned to: Friedman, Paul L.
FREEMAN UNITED COAL                    )    Assign Date: 3/14/07
MINING COMPANY, *et al.*,              )    Description: Holland v. Freeman
United                                 )
                                       )
    Defendants.                     )

## ORDER

THIS MATTER came on to be heard on the motion of defendant

Freeman United Coal Mining Company ("Freeman") to stay this matter or,

alternatively, granting Freeman an additional 30 days to file an answer

or otherwise respond to the Complaint.

Based on the submissions of the parties, and it appearing to the

Court that the motion should be granted, it is hereby

ORDERED that Freeman's motion for stay is granted and this

action is stayed solely as to Freeman. The parties are to advise the Court

of the rulings of the United States District Court for the Central District

of Illinois and the status of this matter against Freeman will then be

addressed.

Entered this _____ day of _____, 2007.


_____
JUDGE

Copies mailed to:

Paul M. Smith
Bar No. 358810
Jenner & Block LLP
601 13th Street, N.W.
Washington, D.C.  20005
(202) 639-6000
psmith@jenner.com
jamunson@jenner.com

*Counsel for Freeman*

Michael W. Robinson
Bar No. 437979
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
(703) 760-1600
(703) 821-8949 (facsimile)
mwrobinson@venable.com

*Counsel for Freeman*

Julia Penny Clark
DC Bar No. 269609
Charlotte Garden
D.C. Bar No. 489040
BREDHOFF & KAISER PLLC
805 Fifteenth Street, NW
Suite 1000
Washington, DC 20005
Telephone:  202-842-2600

David W. Allen
General Counsel
D.C. Bar No. 81638
Larry D. Newsome
Associate General Counsel
D.C. Bar No. 254763
Christopher F. Clarke
Senior Assistant General Counsel
D.C. Bar No. 441708

UMWA Health & Retirement Funds
Office of the General Counsel
2121 K Street, NW
Washington, DC 20037
Telephone:  202-521-2238

*Attorneys for Plaintiffs*

MC1DOCS1\224579