UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael H. Holland, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 07-490-PF |
| Freeman United Coal Mining Company, et al., ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO DEFENDANT FREEMAN UNITED COAL MINING
COMPANY'S MOTION FOR STAY**

**INTRODUCTION**

Defendant Freeman United Coal Mining Company ("Freeman") is seeking to stay indefinitely plaintiffs' case against it (while, in the meantime, Plaintiffs' case against the other defendants proceeds), in order to allow the Central District of Illinois to decide if Freeman's preemptive suit against Plaintiff, which seeks only declaratory relief, should be dismissed or transferred to the District of Columbia.[1]  However, because equity favors allowing this case to proceed apace, and disfavors forcing Plaintiffs to litigate the same

---

[1] Freeman's complaint in the Illinois court also names as co-defendants two other parties, the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators Association ("BCOA"). *See Freeman United Coal Mining Co. v. United Mine Workers of Am., et al.*, No. 07-cv-03048 (C.D. Ill. filed Feb. 9, 2007) ("Illinois Lawsuit"). Their roles in this case, along with their amenability to suit in the District of Columbia, will be discussed below.

Freeman moved, in the alternative, for an extension of time until May 9 to answer or otherwise respond to the complaint. The court has granted an extension to May 1, based (we assume) on the statement in Freeman's motion that Plaintiffs did not oppose an extension to May 1. We assume that Freeman's Motion for Stay is still pending as it has not formally been denied.

1

issues simultaneously in two districts, with a risk of different outcomes, Freeman's motion should be denied.

## BACKGROUND

The trustees of the United Mine Workers of America 1974 Pension Trust ("1974 Trust") brought this suit against seven[2] coal companies to enforce pension contribution requirements to which each of the defendants is subject, and with which each defendant has failed to comply since January 2007. Defendants' obligations arise out of a series of collective bargaining agreements that each incorporate trust documents containing an "Evergreen Clause," which governs signatory employers' obligations to contribute to the 1974 Trust. Specifically, the Evergreen Clause requires signatories to make contributions even after the expiration of the relevant agreement, in an amount set in part by the BCOA, an association of employers. The 1974 Trust is administered in the District of Columbia and previously litigated the meaning and validity of the very same Evergreen Clause in this Court. *See In re United Mine Workers of Am. Benefit Plans Litig.*, 782 F. Supp. 658 (D.D.C. 1992), *aff'd*, *United Mine Workers of Am. 1974 Pension Plan v. Pittston Co.*, 984 F.2d 469 (D.C. Cir.), *cert. denied*, 509 U.S. 924 (1993).

As Freeman describes in its Motion for Stay, the contribution rate for the 1974 Trust was increased in the 2007 National Bituminous Coal Wage Agreement ("NCBWA"). Shortly after learning of the increase, and before the 1974 Trust had an opportunity to ascertain whether Freeman was going to pay the new contribution rate, Freeman filed a declaratory judgment action in the Central District of Illinois. In that

---

[2] This case originally named nine coal companies as defendants, however, two of those defendants have subsequently paid the 1974 Fund the amounts owed and have been voluntarily dismissed. See Dkt. Nos. 4 & 9.

action, Freeman, which has named as defendants the 1974 Plan and its trustees, as well as UMWA and BCOA, seeks a declaration that the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA") and the Labor-Management Relations Act, 29 U.S.C. §§ 301 et seq. ("LMRA") do not require Freeman to make contributions to the 1974 Trust.  Freeman also alleges an alternative claim against the BCOA, seeking damages in the event that Freeman is found to be required to contribute to the 1974 Trust at the newly-established rate.

The 1974 Trust moved to dismiss Freeman's complaint in Illinois on a variety of grounds.  *See* Illinois Lawsuit, Dkt. No. 25.  First, the 1974 Trust asserted the court lacks subject-matter jurisdiction over Freeman's ERISA claim because Freeman, as an employer, is not authorized by the statute to sue (relatedly, the 1974 Trust also asserted that Freeman should not be permitted to take advantage of ERISA's venue provision, which was intended to benefit Plans, and not employers).  Second, Plaintiffs argued that the Central District of Illinois is not a permissible venue for Freeman's LMRA claim because Freeman's complaint does not allege any of the factual predicates for venue in that district under 29 U.S.C. § 1391.  Finally, the 1974 Trust argued that even if Freeman's suit could be brought in the Central District of Illinois, the court should exercise its discretion to transfer the case[3] to the District of Columbia for consolidation with the 1974 Trust's larger case against all of the non-contributing employers.[4]

---

[3] In addition to the possibility that the Illinois court could transfer Freeman's action because the District of Columbia is a superior venue, 28 U.S.C. § 1404, it could also exercise its right to simply decline to hear a declaratory judgment action.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (noting the "nonobligatory nature of the remedy").

[4] Because the employers are located in different states, the District of Columbia is the only district in which all can be sued.  *See* 29 U.S.C. § 1132(e)(2).

The UMWA and the BCOA also moved to dismiss or transfer Freeman's case.  In addition to those reasons articulated by the 1974 Trust, the UMWA argued that Freeman cannot bring a declaratory judgment action under the LMRA and that the case should be transferred to the District of Columbia in the interests of justice.  Illinois Lawsuit, Dkt. Nos. 20 & 24.  For its part, the BCOA made several similar arguments and also argued that Freeman's claims for breach of fiduciary duty or breach of the duty of good faith and fair dealing are not claims on which relief could be granted.  *Id*. Dkt. Nos. 21 & 22.

## ARGUMENT

Freeman argues that, as the party that won the race to the courthouse, its choice of forum is entitled to deference under the "first-filed" rule.  Memorandum in Support of Motion to Stay ("Freeman Mem.") at 3.  However, as the D.C. Circuit has stated,

> [C]hoice of the forum cannot be suitably made by mechanical application of that principle. The opinions recognizing the rule have frequently contained a caveat that it should be ignored under some circumstances, and in a good many cases, proceedings in an earlier-filed action have been stayed to enable the court later acquiring jurisdiction to proceed to judgment first.  We do not regard an injunction favoring the first-filed action as a mandatory step in all instances because countervailing equitable considerations, where present, cannot be ignored.

*Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975).  *See also, Thayer/Patricof Educ. Funding L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 29-30 (D.D.C. 2002) (rejecting rigid application of first-filed rule); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) (same).  As we explain below, equity strongly favors permitting this action to proceed without delay because, contrary to the purpose of the Declaratory Judgment Act and the policies underlying ERISA, Freeman's suit appears to be designed to deprive the 1974 Trust of its choice of forum.  Furthermore, staying this action with respect to defendant Freeman will defeat

the 1974 Trust's attempt to litigate efficiently by bringing a single action to resolve all of the identical claims that the 1974 Trust has asserted against Freeman and six other defendants.

      **1.**      **Freeman's Preemptive Declaratory Action Should Not Deprive the Plaintiffs of Their Choice of Forum.**

In *Thayer/Patricof*, a case with strong parallels to this one, this Court refused to stay second-filed litigation proceeding in the District of Columbia in favor of a "preemptive and declaratory" action that had been filed two weeks earlier in federal court in Kansas: "the first-filed rule should not be applied rotely, particularly if a suit is filed as a preemptive strike to establish a preferred jurisdiction." *Thayer/Patricof Educ. Funding*, 196 F. Supp. 2d at 30. Yet, it appears that Freeman has done exactly that. One can easily surmise that Freeman's interest in bringing suit in Illinois lies in the opportunity to argue its case free from the D.C. Circuit's decision in *Pittston*, which would, of course, constitute controlling precedent were Freeman to question the meaning or validity of the Evergreen Clause in this Court.[5] This type of forum shopping is not a valid use of the Declaratory Judgment Act. *Id.* at 31; *Lewis v. National Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992). Misuse of that Act cannot be the basis for permitting Freeman to force the 1974 Trust to litigate Freeman's case separately from the six other defendants in this case.

---

[5] Freeman foreshadows its intent to challenge the application of the Evergreen Clause in stating that the Illinois action "seeks a declaration of rights . . . under the so-called 'Evergreen Clause' relied on by the Pension Trust in this action." Freeman Mem. at 4. In fact, this Court's experience with the Evergreen Clause is simply another factor in favor of conducting this litigation in the District of Columbia.

Furthermore, ERISA, which forms the basis for both the 1974 Trust's claim and Freeman's Illinois action, reflects a congressional intent to grant benefit plans their choice of forum (most often, as in this case, their home district), and not to require plans to travel around the country in order to collect employer contributions. *International Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004) (§ 502(e)(2) "reflects Congress' intention to protect the financial integrity of such pension funds by allowing these funds to bring all collection suits in their home districts."); *Central States, Southeast & Southwest Areas Pension Fund v. Salasnek Fisheries, Inc*., 977 F. Supp. 888, 890 (N.D. Ill. 1997) (same); *Holland v. King Knob Coal Co., Inc.*, 87 F. Supp. 2d 433, 439 (W.D. Pa. 2000) (ERISA was intended to protect pension funds). In fact, in discussing § 502, the House Education and Labor Committee commented that "[t]he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants." H.R. Rep. No. 93-533, at 4655 (1973). It would do violence to Congress's intent if pension plans could be dragged around the country, and exposed to the risk of inconsistent verdicts, whenever employers anticipated a lawsuit for collection of disputed contributions. Freeman's action is an extreme example of precisely what Congress sought to avoid – a suit, brought halfway across the country from the 1974 Trust's offices, which was filed before the 1974 Trust had so much as the opportunity to ascertain that Freeman was withholding its required contribution.

The 1974 Trust did not "initiat[e] suit at [its] leisure," 10B Charles Alan Wright & Arthur R. Miller, 10B Federal Practice & Procedure § 2751, at 457 (3d ed. 1998) (citation omitted), nor did it "continually accus[e] the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Tempco Elec. Heater Corp.* 819 F.2d at 749.  To the contrary, Freeman rushed to file suit before the 1974 Pension Trust even could be sure that Freeman's failure to pay was deliberate, and not a simple matter of oversight.[6]  Once the 1974 Trust had determined that other employers were consciously withholding their required contributions, the 1974 Trust quickly initiated a single lawsuit against Freeman and eight other employers. Simultaneously, the 1974 Trust, along with UMWA and BCOA, moved to dismiss or transfer the Illinois action.  No other steps have been taken in the Illinois action. Freeman accordingly will not be prejudiced by having to litigate in the District of Columbia.  *Lewis*, 813 F. Supp. at 4 ("the time of the hearing of the motion to dismiss or transfer, not the time of filing, determines the relevant procedural posture").

    **2.**    **The Most Efficient Way to Address This Issue Is To Permit the 1974 Trust to Proceed Simultaneously Against All Defendants in This Action.**

In any event, the 1974 Trust's approach to this case avoids piecemeal litigation by bringing a single consolidated action against each employer that has failed to make required contributions.  "Efficient and responsible judicial administration dictate[s] that [related] cases be tried before the same forum." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978); *rev'd on other grounds*, 652 F.2d 278 (2d Cir. 1981).

---

[6] Courts have repeatedly recognized that a party who brings an action for declaratory relief in response to a statement by its adversary that a lawsuit is imminent is not entitled to its choice of forum. *E.g. Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194 (11th Cir. 1982).

Thus, in *Factors Etc.*, the Second Circuit upheld the Southern District of New York's refusal to stay or transfer a proceeding in favor of a first-filed declaratory action pending in Ohio. The court based its reasoning in large part on the fact that two additional actions involving an identical issue were also pending in New York at the time the New York case was filed, as well as on the anticipatory nature of the defendant's declaratory judgment action in Ohio. *Id.*; *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116-17 (2d Cir. 1992) (upholding district court's refusal to transfer second-filed action when retaining jurisdiction promoted policy of centralized litigation of all claims in bankruptcy court). Essentially, then, from the standpoint of judicial efficiency, there is little to lose and much to gain from permitting this action to proceed simultaneously against all seven defendants.

It could be grossly inefficient for the Court and the 1974 Trust to proceed as Freeman requests—permitting Freeman to sit on the sidelines as this case proceeds against the other defendants—while waiting for a ruling from the Illinois court on the motions to dismiss or transfer. Even if the Illinois court rules within the next month or two, the parties in this action would have been called upon to formulate a discovery plan and submit a proposed pretrial order to the Court under Rules 26(f) and 16(b) of the Federal Rules of Civil Procedure. If the Illinois court's ruling is delayed even slightly (as, for example, by other pressing demands on that judge's time), a pretrial scheduling order would likely be in place and discovery would have begun. The 1974 Trust should not be put to the choice of either lagging in its prosecution of this action or risking duplication of pretrial discovery and other procedures in the event that the Illinois Motion to Dismiss or Transfer is granted.

Freeman's claim can be litigated in its entirety in the District of Columbia without prejudice to Freeman. Significantly, the other parties named in the Illinois action, the BCOA and the UMWA, can both be sued here,[7] so that Freeman can assert as defenses and third-party claims all of the arguments that it advances in the Illinois action. Freeman objects that if it must answer the 1974 Trust's complaint, it would be required to assert its claims (presumably against BCOA and UMWA) here "and raise issues that may be premature or unnecessary for the court to consider." Freeman Mem. at 5. Both BCOA and UMWA have moved to dismiss the claims Freeman asserted against them in the Illinois court for failure to state a claim on which relief can be granted (as well as for lack of jurisdiction and improper venue). If Freeman asserts the same claims here as third-party claims, BCOA and UMWA would be likely to assert here their arguments based on lack of subject-matter jurisdiction and failure to state a claim. Although each of them could be exposed to the need for some overlapping effort, each has authorized us to state on its behalf that it prefers the District of Columbia forum and the early resolution of these issues, and would accept such potential duplication.

For the foregoing reasons, the 1974 Trust could be significantly prejudiced if its efforts to collect required contributions from Freeman are stayed indefinitely, awaiting a ruling from the Illinois court. By contrast, the balance of equities favors requiring Freeman to continue litigating in the District of Columbia because its attempt to bring

---

[7] The BCOA is located here, and the UMWA (which is located in Northern Virginia) has indicated its consent to be sued here. Illinois Lawsuit, Dkt. No. 24 at 13 n.7. Furthermore, the large majority of events that led to this lawsuit took place here. For example, the relevant collective bargaining agreements, including the most recent one that included the increased contribution rates, were negotiated in the District of Columbia. The events underlying both this lawsuit and the Illinois action were explained in some detail the Declaration of Charles S. Perkins, filed with the BCOA's Motion to Dismiss the Illinois action (*Id.*, Dkt. # 22, Attachment 1) and attached hereto as Exhibit 1.

9

suit in Illinois is little more than an attempt at impermissible forum shopping in contravention of the clear intent of ERISA.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that defendant Freeman's Motion for Stay be denied.

Respectfully submitted,

s/Julia Penny Clark
JULIA PENNY CLARK
D.C. Bar No. 269609
CHARLOTTE GARDEN
D.C. Bar No. 489040
Bredhoff & Kaiser P.L.L.C.
805 Fifteenth Street N.W.
Suite 1000
Washington, DC 20005
Telephone:  202-842-2600


DAVID W. ALLEN
General Counsel
D.C. Bar No. 81638
LARRY D. NEWSOME
Associate General Counsel
D.C. Bar No. 254763
CHRISTOPHER F. CLARKE
Senior Assistant General Counsel
D.C. Bar No. 441708

UMWA HEALTH & RETIREMENT FUNDS
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C.  20037
Telephone:  202-521-2238

*Attorneys for Plaintiffs*

Dated:  April 23, 2007

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 23rd day of April, 2007, I filed the foregoing Opposition to Defendant Freeman United Coal Mining Company's Motion to Stay via ECF, which automatically gave notice of such filing to defendants Freeman United Coal Mining Company and Monterey Coal Company.   I further certify that I served said Opposition via first-class mail on the remaining defendants, through their registered agents, at the following addresses:

    BANDMILL COAL COMPANY
    c/o Legal Department
    315 70th Street, S.E.
    Charleston, WV 25304.

    EAST STAR MINING, INC.
    c/o A. Benton Chafin, Jr.
    118 Southeast Main St.
    Lebanon, VA 24266

    LITWAR PROCESSING COMPANY, LLC
    c/o Corporation Service Company
    209 W. Washington St.
    Charleston, WV 25302

    POWER MOUNTAIN COAL COMPANY
    c/o Legal Department
    315 70th Street, S.E.
    Charleston, WV 25304.

    GOALS COAL COMPANY
    c/o Legal Department
    315 70th Street, S.E.
    Charleston, WV 25304.

                              s/Julia Penny Clark
                              Julia Penny Clark

Declaration of Charles S. Perkins, III

I, Charles S. Perkins, III, do hereby declare as follows:

1. I am the Secretary-Treasurer of the Bituminous Coal Operators' Association, Inc. ("BCOA"). I became employed by BCOA in April 1976 and have worked continuously for BCOA for the past 31 years.

2. BCOA is a non-profit corporation incorporated in the District of Columbia. BCOA was formed in 1950 to bring order and stability to labor negotiations and labor relations in the bituminous coal industry.

3. For the past 57 years, BCOA's principal and only office has been located in Washington, D.C., and is currently located at 1776 I Street, N.W., Washington, D.C. All of BCOA's employees work in the District of Columbia, and BCOA's records are located in the District of Columbia.

4. BCOA's members consist of bituminous coal companies that have authorized BCOA to represent them in the negotiation of collective bargaining agreements with the United Mine Workers of America ("UMWA"), and bituminous coal companies that have special expertise in coal industry matters, including mine health, safety, training, and government affairs.

5. One of BCOA's principal functions is the negotiation of the National Bituminous Coal Wage Agreement ("NBCWA") with the UMWA. BCOA has negotiated every NBCWA with the UMWA since 1950 – namely, the 1951, 1952, 1955, 1956, 1958, 1964, and 1966 amendments to the NBCWA of 1950 and the NBCWAs of 1968, 1971, 1974, 1978, 1981, 1984, 1988, 1993, 1998, 2002, and 2007.

6.  Freeman United Coal Mining Company ("Freeman") joined and became a member of BCOA in April 1966. Freeman was a member of BCOA for approximately 31 years – until it withdrew from BCOA in 1997.

7.  Freeman was a member of BCOA in 1978 when BCOA negotiated the "evergreen clause" with the UMWA. The NBCWA negotiations that resulted in the evergreen clause were conducted in Washington, D.C.

8.  Freeman was a member of BCOA during the negotiations for the NBCWAs of 1978, 1981, 1984, 1988, and 1993. Each of these negotiations was conducted in Washington, D.C. In the 1988 and 1993 NBCWA negotiations, Freeman had a representative on BCOA's CEO Committee, which was responsible for the overall direction of negotiations for the NBCWA. In each of the NBCWA negotiations from 1978 through 1993, Freeman (through its membership in BCOA) agreed to the evergreen clause and agreed to update it to include the most recent NBCWA.

9.  In 1988, the 1974 Pension Plan (and other UMWA Funds) initiated litigation against several coal companies to enforce the evergreen clause. BCOA (including Freeman) participated in this litigation in support of the position of the 1974 Pension Plan. All of this litigation was consolidated in federal district court in Washington, D.C.

10. In 1992, the United States District Court for the District of Columbia issued a decision granting summary judgment to the 1974 Pension Plan regarding enforcement of the evergreen clause. See *In re United Mine Workers of America Benefit Plans Litigation*, 782 F. Supp. 658 (D.D.C. 1992). In 1993, the United States Court of Appeals for the District of Columbia affirmed the decision of the district court. See *United Mine Workers of America 1974 Pension Plan, et al. v. Pittston Company*, 984 F. 2d 469 (D.C. Cir. 1993). The coal companies

unsuccessfully sought review of the evergreen clause decision by the United States Supreme Court. Review was denied by the Supreme Court on June 28, 1993. See *Rawl Sales and Processing Co. v. UMWA 1974 Pension Plan Trust*, 509 U.S. 924 (1993), and *Pittston Company v. UMWA 1974 Pension Trust*, 509 U.S. 924 (1993).

11. After the evergreen clause was litigated and decided by the federal courts in Washington D.C., Freeman remained in BCOA for the 1993 NBCWA negotiations with the UMWA. As a result of those negotiations, which were held in Washington, D.C., BCOA and its members, including Freeman, once again agreed to the evergreen clause. The 1993 NBCWA became effective December 16, 1993.

12. After Freeman withdrew from BCOA in 1997, BCOA continued to negotiate NBCWAs with the UMWA, including, the NBCWAs of 1998, 2002, and 2007. Each of these negotiations was conducted primarily in Washington, D.C. In each of these negotiations, BCOA and the UMWA agreed to continue and update the language of the evergreen clause to include the most recent NBCWA.

I have read the foregoing, consisting of 12 numbered paragraphs, and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

3·14·07
Date

Charles S. Perkins, III