**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MICHAEL H. HOLLAND**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 1:07-cv-00490-PLF** |
| | ) | |
| **FREEMAN UNITED COAL** | ) | |
| **MINING COMPANY**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**FREEMAN'S REPLY IN SUPPORT OF MOTION FOR STAY, OR IN THE
ALTERNATIVE, REQUEST FOR EXTENSION OF TIME**</u>

<u>**INTRODUCTION**</u>

In its opening memorandum, Freeman United Coal Mining Company ("Freeman")

argued that this action (the "D.C. Action") should be temporarily stayed while the United States

District Court for the Central District of Illinois decides whether the first-filed action ("the

Central District Action"), which Freeman brought against the Trustees of the United Mine

Workers of America 1974 Pension Trust ("the Trustees"), should proceed there or be transferred

to this Court.  In support of its motion, Freeman argued that a temporary stay until the Central

District rules on the Trustees' now-fully-briefed transfer motion is appropriate because:  (1) it is

well established that the Central District, which is the putative transferor court, is the court that

should initially decide which of the two actions will proceed; (2) this Court has discretion to stay

this case until the Central District decides this preliminary issue; and (3) the Court should

exercise its discretion for a temporary stay because the issues presented in the D.C. Action are

included in the Central District Action and litigating these issues in two separate courts is

wasteful and contrary to sound judicial administration.  *See, e.g., IBT/HERE Employee*

*Representatives' Council v. Gate Gourmet Div. Am.*, 402 F. Supp. 2d 289, 292 (D.D.C. 2005)

("A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere.").

In their response, the Trustees address none of these arguments as to why a temporary stay is appropriate under the circumstances here.  Rather than address the merits of Freeman's motion for stay, they instead reiterate the same arguments they made to the Central District in support of their transfer motion.  However, as explained below, those arguments have no bearing on the motion to stay that is before this Court.

## ARGUMENT

**I.    The Trustees' Arguments in Support of their Transfer Motion Have No Relevance to this Motion to Stay.**

The Trustees' principal argument is that the Central District Action is an improper "preemptive strike" which should not deprive the Trustees of their choice of forum.  (Tr. Opp. at 4-5.)  Yet that is the same argument they made to the Central District in arguing why that action should be transferred to this Court -- it is not a response to Freeman's motion to stay.  Moreover, the Trustees misstate Freeman's many arguments as to why the Central District should *not* transfer the action to the District of Columbia.  As set forth more fully in Freeman's Response, filed in the Central District and attached hereto as Exhibit A, Freeman argued that the Central District should not transfer Freeman's action because:  (1) a plaintiff's choice of forum is entitled to "great weight" and should rarely be disturbed, particularly where, as here, the plaintiff resides in the forum district and many material events occurred there;[1] (2) the defendants have not shown that the convenience of witnesses or any other relevant factor favors transfer; and (3) the interest of justice also weighs against transfer.

---

[1] The 2003 Freeman Agreement was negotiated by the parties in Springfield, Illinois; ratified in Macoupin County, Illinois; and administered in Springfield and in Macoupin County, Illinois. (Ex. A at 23-24.)

In their Opposition, the Trustees cite the line of cases that hold that courts may decline to follow the first-filed rule where there was an improper "anticipatory filing," such as where the plaintiff "raced to the courthouse" after receiving notice that defendants intended to sue, or where the plaintiff otherwise engaged in bad faith conduct. *See* Tr. Opp. at 4 (citing *Thayer/Patricof Educ. Funding L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 29-30 (D.D.C. 2002); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987)). In its Response, Freeman readily distinguished those cases. In ERISA actions like this, courts have regularly allowed first-filed declaratory judgment actions to proceed where, as in the Central District Action, the plaintiff resides in the forum district and other relevant activity occurred there. *See* Ex. A at 21-23.[2]

Moreover, *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620 (D.C. Cir. 1975), also cited by the Trustees on this issue, only provides further support for Freeman's request that a temporary stay be granted here. In that case the D.C. Circuit held that it was inappropriate for a single controversy to be resolved in two different courts -- "Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided." *Id.* at 626 (footnote omitted). Contrary to that holding, the Trustees' Opposition effectively requests that

---

[2] *See also BorgWarner Diversified Transmission Prods., Inc. v. United Auto., Aerospace, and Agric. Implement Workers*, No. 06-058, 2006 WL 1328723, at *5-6 (S.D. Ind. May 12, 2006) (finding *Tempco* inapplicable and refusing to abstain from hearing plaintiff's first-filed ERISA declaratory judgment action); *Bowe Bell + Howell Co. v. IMMCO Employees' Ass'n*, No. 03-8010, 2004 WL 1244143, at *6-7 (N.D. Ill. June 2, 2004) (refusing to transfer plaintiff's first-filed ERISA declaratory judgment action); *Reynolds v. Stahr*, 758 F. Supp. 1276, 1281-82 (W.D. Wis. 1991) (holding plaintiff's first-filed ERISA declaratory judgment action should move forward); *Dugan v. D&M Excavating, Inc.*, No. 90-0495, 1990 WL 70345, at *1 (N.D. Ill. May 10, 1990) (transferring coercive ERISA action in favor of first-filed declaratory action; stating that *Tempco* "emphasized the discretion of the court" and did not hold that declaratory actions must defer to the coercive action).

the controversy relating to Freeman's obligations under the 1974 Plan be litigated simultaneously in two separate courts, which would be a complete waste of judicial resources.

Similarly, the Trustees argue that ERISA plans should be allowed their choice of forum and not be required to "travel around the country" to collect employer contributions. *See* Tr. Opp. at 6 (citing *International Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004); *Central States, Southeast & Southwest Areas Pension Fund v. Salasnek Fisheries, Inc.,* 977 F. Supp. 888, 890 (N.D. Ill. 1997)).  The cases relied upon by the Trustees for this proposition are inapposite.  They merely hold that when an ERISA plan is a plaintiff and the defendant seeks to transfer under 28 U.S.C. § 1404(a), the plaintiff's choice of venue is given "even greater deference."  *International Painters*, 357 F. Supp. 2d at 56.  Again, this is not a transfer motion under 28 U.S.C. § 1404(a), but a motion for temporary stay.  Moreover, the Trustees' argument ignores the fact that the Trustees have litigated ERISA issues all over the country.  *See, e.g.*, *Holland v. Cline*, No. 2:05-00535, 2006 WL 1728012 (S.D. W. Va. June 21, 2006) (Trustees' action against employer for failure to make monthly contributions); *Holland v. Pardee Coal Co., Inc.*, 93 F. Supp. 2d 706 (W.D. Va. 2000) (Trustees' suit against mining company for unpaid health care premiums); *Holland v. High-Tech Collieries, Inc.*, 911 F.Supp. 1021 (N.D. W. Va. 1996) (Trustees' action for unpaid benefits); *Connors v. Princeton Coal Group, Inc.,* 770 F. Supp. 1132 (S.D. W. Va. 1991) (Trustees' action against mining companies for failing to make pension plan payments); *Connors v. Peles*, 724 F. Supp. 1538 (W.D. Pa. 1989) (Trustees' action for "withdrawal liability" under ERISA).

## II.    Freeman's Motion to Stay Is in the Interest of Judicial Economy.

The Trustees' final argument is that it would somehow be "most efficient" for a temporary stay to be denied, thus allowing both actions to proceed simultaneously.  (Tr. Opp. at

7-10.)  The Trustees' argument makes little sense.  When the same parties are litigating the same issues in two separate courts, a stay pending the potential consolidation of the matters is in the interest of judicial economy.  *See National Shopmen Pension Fund v. Folger Adams Sec., Inc.,* 274 B.R. 1, 3 (D.D.C. 2002) ("Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests regarding time, cost, and effort."); *see also Aetna U.S. Healthcare, Inc. v. Hoechts Aktiengesellschaft,* 48 F. Supp. 2d 37, 43 (D.D.C. 1999) (granting motion for stay pending resolution of motion to transfer and consolidate based upon potential for common and overlapping issues in cases); 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3866 (2d ed. 1987) (discussing jurisdiction and power of the transferee court).

       In their Opposition, the Trustees strive to find some supposed inefficiency here by claiming that the Central District may "delay" its ruling, which would somehow cause risks of duplicative pretrial discovery and other pretrial delays.  (Tr. Opp. at 8.)  Those arguments are specious.  Freeman has not moved for an indefinite stay; it has sought a short stay until the Central District Court rules on the pending transfer motion.  And, the Trustees cite no support -- and there is none -- for their supposition that Judge Jeanne Scott of the Central District will not timely rule on this issue.  As discussed above, the motions are fully briefed and ready for ruling. Moreover, there is no real risk of any pretrial or discovery delays to be caused by this requested stay.  The D.C. Action is *brand new*.  In fact, since the Trustees filed their action, they dismissed two defendants, five have filed no answer or any response whatsoever to the complaint, and one (Monterey Coal) has been granted an extension to answer until May 1, 2007.[3]  Because no

---

[3] The Trustees' Opposition erroneously states that this Court also has granted Freeman an extension until May 1, 2007 to file an answer.  (Tr. Opp. at 1, n.1.)  This Court has not yet ruled

defendant has even filed an answer, the specter of the Trustees' "lagging in [their] prosecution of this action" (Tr. Opp. at 8) is entirely illusory.  It is in the interest of judicial economy to stay this action against Freeman until the Central District rules on the transfer motion.  *See Fund for Animals v. Norton*, 352 F. Supp. 2d 1, 2 (D.D.C. 2005) (ordering case stayed pending the ruling of the Wyoming federal court on defendants' associated motion to transfer a related case); *Sevel v. AOL Time Warner, Inc.,* 232 F. Supp. 2d 615, 616 (E.D. Va. 2002) (staying proceedings until the panel on multidistrict litigation ruled on motion to transfer or to consolidate in order to avoid confusion and duplication of effort).

## <u>CONCLUSION</u>

For the reasons stated above and in its opening memorandum, Freeman respectfully requests that the Court stay this action against Freeman until the Central District rules on the transfer motion or, in the alternative, grant Freeman an additional 30 days to file an answer or otherwise respond to the Complaint.

---

on Freeman's motion to stay, or in the alternative for an additional 30 days to file an answer or otherwise plead.   Thus, no May 1 deadline for an answer applies to Freeman.

Respectfully submitted:


/s/ Paul M. Smith
Michael W. Robinson
Bar No. 437979
VENABLE LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
(703) 760-1600
mwrobinson@venable.com

Paul M. Smith
Bar No. 358870
JENNER & BLOCK LLP
601 13th Street, N.W.
Washington, D.C.  20005
(202) 639-6000
psmith@jenner.com

*Attorneys for Defendant Freeman United
Coal Mining Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of April, 2007, I filed the foregoing Reply in Support of Motion for Stay on in the Alternative, Request for Extension of Time via ECF, which automatically gave notice of such filing to all Plaintiffs and to Defendant Monterey Coal Company.  I further certify that I served said Reply via first-class mail on the remaining defendants, through their registered agents, at the following addresses:

BANDMILL COAL COMPANY
c/o Legal Department
315 70th Street, S.E.
Charleston, WV 25304

EAST STAR MINING, INC.
c/o A. Benton Chafin, Jr.
118 Southeast Main St.
Lebanon, VA 24266

LITWAR PROCESSING COMPANY, LLC
c/o Corporation Service Company
209 W. Washington St.
Charleston, WV 25302

POWER MOUNTAIN COAL COMPANY
c/o Legal Department
315 70th Street, S.E.
Charleston, WV 25304.

GOALS COAL COMPANY
c/o Legal Department
315 70th Street, S.E.
Charleston, WV 25304

Respectfully submitted:


/s/ Paul M. Smith_____
Paul M. Smith
Bar No. 358870
JENNER & BLOCK LLP
601 13th Street, N.W.
Washington, D.C.  20005
(202) 639-6000
psmith@jenner.com

# Exhibit A

**E-FILED**
Monday, 16 April, 2007  04:52:59 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **FREEMAN UNITED COAL MINING COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CASE NO. 07-CV-03048-JES-CHE** |
| | ) | |
| **UNITED MINE WORKERS OF AMERICA, et. al.** | ) | |
| | ) | |
| **Defendants** | ) | |

<u>**RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS AND/OR TO TRANSFER**</u>

<u>**Introduction**</u>

Freeman United Coal Mining Company ("Freeman"), by counsel, submits this opposition to the motions to dismiss or transfer filed by Defendant 1974 Pension Trust and Defendants Holland, Buckner, Schaab, and Hyler ("1974 Pension Trust" or "Trust"), Defendant United Mine Workers of America ("UMWA") and Defendant Bituminous Coal Operators' Association, Inc. ("BCOA").

Freeman filed this action to resolve a dispute as to whether Freeman is obligated to make contributions to the 1974 Pension Trust at rates recently established through an agreement between BCOA and UMWA.  Defendants filed three separate motions to dismiss.  None addresses the merits of Freeman's claim that the various collective bargaining agreements do not impose the obligations claimed by the three Defendants.  Each motion challenges subject-matter jurisdiction and argues that the action should be transferred to the District of Columbia, and BCOA has also moved to dismiss pursuant to Rule 12(b)(6).  Because these arguments overlap, Freeman is submitting a single response.

Defendants' motions should be denied for the following three reasons:

**First**, this Court has federal subject-matter jurisdiction over Count I, Freeman's declaratory judgment claim, because federal question jurisdiction would exist over a coercive action brought by the declaratory judgment Defendants. Here, there is no question that the 1974 Pension Trust could bring a coercive action against Freeman under either § 502 of ERISA, 29 U.S.C. § 1132, or § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and UMWA and BCOA could bring a coercive action against Freeman under § 301 of the LMRA. Thus, Freeman's declaratory judgment action against all Defendants "arises under" federal law and jurisdiction is proper under 28 U.S.C. § 1331, as well as § 301.

**Second,** if the Court finds that Freeman owes contributions to the 1974 Pension Trust at the higher rate agreed to by BCOA, then Freeman has stated in Count II a claim against BCOA for breach of its fiduciary duties to Freeman under both federal common law and state law. Freeman has alleged facts that establish: (1) a relationship between Freeman and BCOA that imposes legal duties with respect to BCOA's authority to commit Freeman to financial obligations; (2) BCOA's actions in breach of those duties while BCOA was acting as an instrumentality of a Freeman competitor; and, (3) resulting damages. Freeman has therefore alleged all of the requisite elements of a claim for relief.

**Third,** Defendants have not met their burden to justify a transfer of this action to the District of Columbia, because: (1) a plaintiff's choice of forum is entitled to "great weight" and should rarely be disturbed, particularly where, as here, the plaintiff resides in the forum district and many material events occurred in the Central District of Illinois; (2) Defendants have not shown that the convenience of witnesses or any other relevant factor favors transfer; and (3) the interest of justice also weighs against transfer.

2

The facts relevant to the motions to dismiss for lack of jurisdiction or for failure to state a claim are supplied by the complaint. Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and must draw all reasonable inferences in favor of Freeman. *Citizens Against Longwall Mining v. Cold LLC & IEC (Montgomery) LLC*, No. 05-3279, 2007 WL 496388 (C.D. Ill. Feb. 12, 2007). With respect to Defendants' motions to dismiss for lack of venue or to transfer, Freeman has submitted as Exhibit A hereto the Affidavit of Donald H. Dame. *See Emjayco v. Morgan Stanley & Co., Inc.*, 901 F. Supp. 1397, 1400 (C.D. Ill. 1995) (if a defendant provides affidavits challenging venue, the court must look to the plaintiff's affidavits as well, and all conflicts must be resolved in the plaintiff's favor).

## Argument

**I.     THIS COURT HAS FEDERAL SUBJECT-MATTER JURISDICTION OVER COUNT I, FREEMAN'S DECLARATORY JUDGMENT COUNT.**

**A.     Federal Subject-Matter Jurisdiction Is Proper Against The 1974 Pension Trust Because It Could Bring A Coercive Action Against Freeman Under § 502 of ERISA.**

Although it is beyond dispute that the 1974 Pension Trust could bring a coercive action against Freeman under ERISA, it nonetheless argues that the Court does not have subject-matter jurisdiction because an employer is not one of the parties explicitly authorized to bring a suit for enforcement of its rights in ERISA § 502(a).[1] In support of this argument, the 1974 Pension Trust cites dicta from the Supreme Court's decision in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983). The Trust, however, ignores the actual holding of

---

[1]     UMWA and BCOA make the same argument. But the basis for federal question jurisdiction against these parties is § 301 of the LMRA. Therefore, Freeman need not address the arguments made by UMWA and BCOA regarding their alleged fiduciary status under ERISA, as such arguments are inapplicable.

3

*Franchise Tax Board* and ignores Seventh Circuit precedent interpreting the same. A full analysis of *Franchise Tax Board* and its progeny establish that federal subject-matter jurisdiction is proper over Freeman's declaratory judgment action.

In *Franchise Tax Board*, the Court considered whether it had federal subject-matter jurisdiction over an action brought by a state tax agency for a declaration of its rights regarding a state tax levied on an ERISA-covered benefit plan. *See id.* at 4. "The Court held that even though a construction of ERISA would be required to resolve the state tax authority's claim, the declaratory judgment suit by the state did not 'arise under' federal law because the underlying cause of action was grounded on the state law." *Commercial Nat'l Bank of Chicago v. Demos,* 18 F.3d 485, 490 (7th Cir. 1994) (citing *Franchise Tax Bd.*, 463 U.S. at 20). Although the Court noted in passing that the state tax agency was not one of the parties explicitly authorized to bring suit under § 502 of ERISA, that observation was not the basis for the Court's holding. *See Franchise Tax Bd.*, 463 U.S. at 21. Rather, the Court's holding was that the "situation presented by a State's suit for the declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction . . . to convince us that . . . such a suit is not within the original jurisdiction of the United States district courts." *Id.*

In contrast to *Franchise Tax*, the questions presented in Freeman's declaratory judgment suit are exclusively federal questions and there is nothing remotely related to state law involved. Indeed, none of the Defendants argue otherwise. Rather, the Defendants insist that if Freeman is not permitted to bring an action directly under § 502 of ERISA, it may not bring a declaratory judgment action either.[2] But such a "simplistic approach to a determination of jurisdiction under

---

[2]    Freeman does not respond to the Defendants' standing and subject-matter jurisdiction arguments separately because the Defendants' arguments regarding standing are simply derivative of their arguments regarding subject matter jurisdiction and so are irrelevant.

4

the Declaratory Judgment Act -- since jurisdiction does not apply directly under ERISA it cannot

lie under the Declaratory Judgment Act -- does not withstand scrutiny.  A proper determination

concerning jurisdiction under the Declaratory Judgment Act depends upon the nature of the

coercive action threatened by the respondents." *Reynolds v. Stahr,* 758 F. Supp. 1276, 1281

(W.D. Wis. 1991)  Here, the coercive action threatened (and actually commenced in the District

of Columbia) by the Defendants presents questions regarding the interpretation of terms in

collective bargaining agreements and an ERISA benefit plan, which are indisputably matters of

federal law.

In applying *Franchise Tax Board*, the Seventh Circuit has made clear that "the

dispositive issue is whether such a coercive action would itself present a substantial question of

federal law." *Commercial Nat'l Bank*, 18 F.3d at 489.  Applying this principle in *Ameritech

Benefit Plan Committee v. Communication Workers of America*, 220 F.3d 814 (7th Cir. 2000),

the Court rejected the very argument that Defendants advance here -- that an employer was not

authorized to bring a declaratory judgment action because the federal statute at issue did not

authorize employers to bring an enforcement action.  *See id.* at 819.  The Court held that the

statute's failure to explicitly authorize an enforcement action by employers did "not implicate the

jurisdiction of the district court" because the "basis for jurisdiction comes from the underlying

controversy, not the particular party initiating suit."  *Id.*  There, as here, the underlying

controversy raised substantial questions of federal law.

Although the Seventh Circuit has not specifically addressed the question of an

employer's ability to bring a declaratory judgment action where the threatened coercive action

would arise under § 502 of ERISA, other circuits that have considered the issue have upheld

federal subject-matter jurisdiction over declaratory judgment actions brought by parties not

5

explicitly authorized to bring an enforcement suit under § 502(a).  *See Prudential Ins. Co. v. Doe*, 76 F.3d 206, 210 (8th Cir. 1996); *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1253 (9th Cir. 1987); *Stone & Webster Eng'g Corp. v. Ilsley*, 690 F.2d 323, 327-28 (2d Cir. 1982).  And district courts in the Seventh Circuit have likewise upheld federal subject-matter jurisdiction over these actions.  *See BorgWarner Diversified Transmission Prods., Inc. v. United Auto., Aerospace, and Agric. Implement Workers*, No. 06-058, 2006 WL 1328723 at *3-4 (S.D. Ind. May 12, 2006) (noting that "*Franchise Tax Board* does not bar all declaratory judgment actions that arise under ERISA"); *Bowe Bell + Howell Co. v. IMMCO Employees' Ass'n*, No. 03-8010, 2004 WL 1244143 at *4-5 (N.D. Ill. June 2, 2004) (same); *Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1*, No. 00-1615, 2000 WL 1448660 at *3 (N.D. Ill. May 11, 2000) (upholding federal subject-matter jurisdiction over an employer's declaratory judgment action against a pension fund regarding a disputed payment obligation); *Reynolds*, 758 F. Supp. at 1281 (holding that there was "no question" that the court had federal jurisdiction over the declaratory judgment action); *but see Pabst Brewing Co., Inc. v. Corrao*, 176 F.R.D. 552, 560-61 (E.D. Wis. 1997).

Moreover, employers are not categorically barred from bringing suit under ERISA.  The Seventh Circuit has recognized that an employer can assert a cause of action under the common law of ERISA to recover payments made in error to an employee benefit plan.  *See UIU Severance Pay Trust Fund v. Union No. 19-U, USWA*, 998 F.2d 509, 512 (7th Cir. 1993); *Construction Indus. Ret. Fund v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993). Freeman might have paid the contested amount to the 1974 Pension Trust and filed suit concurrently to seek restitution.  Instead, it withheld the contested amount and filed a declaratory judgment action on the date such payment was due to determine its obligations.  "The only

6

difference . . . is one of timing -- whether the employer sues before it has paid the contested

amounts, or whether it sues to recover amounts already paid." *Chicago Steel & Crane, Inc.*,

2000 WL 1448660 at *3. And this timing issue is simply not relevant to whether the claim

"arises under the federal common law of ERISA." *Id.*; *see id.* ("When an ERISA fund accuses

an employer of delinquency in its fund contributions, the employer's interest in a proper

determination of its payment obligations is just as strong as in the case where the employer has

already paid the contested amounts and seeks to recover them.").

　　This Court has federal subject-matter jurisdiction over Freeman's declaratory judgment

action against the 1974 Pension Trust under 28 U.S.C. § 1331 because the Trust could clearly

bring a coercive action against Freeman under § 502 of ERISA (indeed, it already has).

**B.　Federal Subject-Matter Jurisdiction Is Proper Against The 1974 Pension Trust Because It Could Bring A Coercive Action Against Freeman Under § 301 of the LMRA.**

　　The 1974 Pension Trust does not contest this Court's jurisdiction over it as to Freeman's

declaratory judgment action based on § 301 of the LMRA, and indeed it could not. The 1974

Pension Trust would clearly be able to bring a coercive action against Freeman under § 301 of

the LMRA, which creates federal jurisdiction over suits claiming violations of collective

bargaining agreements. *See, e.g., Laborers' Pension Fund v. Joe Cachey Const. Co., Inc.*, 947 F.

Supp. 365, 368 (N.D. Ill. 1996) (noting that pension funds could bring suit under § 301 because

they were "third party beneficiaries of the [collective bargaining] agreement"). That is, in fact,

exactly what the Trust has done in the District Court of the District of Columbia. Thus, even if

federal subject-matter jurisdiction were improper under 28 U.S.C. § 1331 as to Freeman's

declaratory judgment action against the 1974 Pension Trust based on ERISA (which it is not),

jurisdiction is certainly proper as to Freeman's declaratory judgment action based on the LMRA.

C.    **Federal Subject-Matter Jurisdiction Is Proper For the Claims Against UMWA and BCOA Because They Could Bring A Coercive Action Against Freeman Under § 301 of the LMRA.**

Jurisdiction is likewise proper over Freeman's declaratory judgment action against BCOA and UMWA under § 301 of the LMRA. Because these Defendants could bring a coercive action against Freeman for breach of its alleged obligations to make contributions under the Freeman collective bargaining agreement, it is clearly proper for Freeman to pursue a declaratory judgment that it has no such obligations under the agreement.

1.    *Textron* **Supports Freeman's Action.**

UMWA and BCOA rely on the Supreme Court's decision in *Textron Lycoming Reciprocating Engine Division v. United Auto Workers*, 523 U.S. 653 (1998), to argue against federal subject-matter jurisdiction. That reliance is misplaced. Defendants argue that *Textron* bars this case because it limits lawsuits under § 301 to those actions claiming violations of labor contracts. But that is precisely the kind of lawsuit that forms the basis of Freeman's declaratory judgment action. Because BCOA and UMWA could bring such a suit against Freeman under § 301, Freeman can seek a declaratory judgment as to obligations under its contract.

Nothing in *Textron* undermines such a conclusion. In fact, *Textron* unambiguously authorizes suit by a "declaratory judgment plaintiff accused of violating a collective-bargaining agreement." *Id.* at 658. The issue there was a lawsuit by a union under § 301 seeking a declaratory judgment that a collective bargaining agreement was voidable at the union's option. *See id.* at 655. The Court noted that the union "neither allege[d] that Textron ha[d] violated the contract nor [sought] relief from its own alleged violation." *Id.* at 658. The Court explicitly distinguished between cases in which a "declaratory judgment plaintiff [is] accused of violating a collective-bargaining agreement" (over which federal subject-matter jurisdiction was proper) and

cases like *Textron* in which "both parties [were] in absolute compliance with the collective-bargaining agreement" (over which federal subject-matter jurisdiction was not proper). *Id.*

Because Freeman's refusal to pay contributions demanded by UMWA is alleged to be a breach of Freeman's obligations under its collective bargaining agreement, Freeman seeks a declaration of its rights. That is perfectly appropriate under *Textron*. *See Stevens Construction Corp. v. Chicago Regional Council of Carpenters*, 464 F.3d 682, 684-85 (7th Cir. 2006) (distinguishing *Textron* in holding that federal subject-matter jurisdiction was proper under § 301 where the union had filed a grievance against the declaratory judgment plaintiff claiming a violation of a collective bargaining agreement); *J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers*, 398 F.3d 967, 972-73 (7th Cir. 2005) (holding *Textron* inapplicable to a situation in which the declaratory judgment plaintiff was accused in another forum of violating the collective bargaining agreement).

But even if § 301 did not confer jurisdiction directly, jurisdiction would still be available under 28 U.S.C. § 1331 based on the common law of § 301. *See Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004) ("Federal courts are authorized to hear many labor-relations disputes by 29 U.S.C. § 185, and others by the federal-question jurisdiction."). As the Seventh Circuit noted in *Teamsters National Automotive Transporters Industry Negotiating Committee v. Troha*, 328 F.3d 325 (7th Cir. 2003): "[T]he Supreme Court has determined that § 301, beyond expressly authorizing the federal courts to hear suits brought for violations of collective bargaining agreements, also authorizes the federal courts to fashion a body of common law for the enforcement of the collective bargaining agreements over which they have jurisdiction." *Id.* at 329 (citing *Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 448, 455 (1957)). The *Troha* Court therefore held that although jurisdiction may not have been available directly under

§ 301 of the LMRA to hear a union's suit against a non-signatory to its collective bargaining agreement, the Court nonetheless had federal subject-matter jurisdiction under 28 U.S.C. § 1331. *See id.* *Troha* thus provided the following guidance to district courts: "When the purpose of the lawsuit effectuates the goals of § 301, then it is appropriate for federal common law to embrace such suits." *Id.* at 330.

The "goals of § 301" were articulated by the Supreme Court in *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448 (1957), as establishing a "federal policy that federal courts should enforce [collective bargaining] agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Id.* at 455. Here, the entire case or controversy turns on the interpretation of certain provisions of Freeman's 2003 collective bargaining agreement and the 1974 Plan Agreement incorporated therein. No Defendant alleges that these are not federal questions. Indeed, had Freeman brought its Count I claims under state law they unquestionably would have been preempted by § 301. *See, e.g., Tifft v. Commonwealth Edison Co.*, 366 F.3d 513, 516 (7th Cir. 2004) ("Due to the importance of uniformity in labor law, any state law claim 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract' will be completely preempted by section 301 of the LMRA." (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).) Because the purposes of Freeman's declaratory judgment action effectuate the goals of § 301 of the LMRA, federal subject-matter jurisdiction exists.

> ### 2. That BCOA Is a Non-Party to Freeman's Collective Bargaining Agreement Does Not Alter the Jurisdictional Analysis as to that Defendant.

The BCOA further argues (in a single sentence) that federal subject matter is not proper as to it because it is a not a party to Freeman's collective bargaining agreement with UMWA.

10

Although BCOA cites the first part of the Seventh Circuit's opinion in *Troha* for this proposition, it ignores the second half in which the Court held that the federal common law under § 301 of the LMRA created a cause of action by which a party to a collective bargaining agreement could bring suit against a non-party. *See Troha*, 328 F.3d at 331. As the Court held, "the limitation [of § 301] is more aptly described not in terms of parties but in terms of the purpose of the lawsuit." *Id.* at 330 (citing *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93 (1991); *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962)).

Here, as noted above, the purpose of Freeman's lawsuit is to seek declaratory relief from alleged violations of its obligations under its collective bargaining agreement. Freeman seeks this relief because the Defendants, *including BCOA*, could clearly bring coercive actions against Freeman. Indeed, the D.C. Circuit has expressly noted that the "BCOA, its members, and any other contributing employers may . . . be entitled to bring enforcement actions against one another for breach of contract" where employers were not contributing equally to the pension plan. *United Mine Workers of Am. v. Bituminous Coal Operators Ass'n, Inc.*, 898 F.2d 177, 182 n.7 (D.C. Cir. 1990). The Court cited *Painting & Decorating Contractors Association v. Painters & Decorators Joint Committee*, 707 F.2d 1067 (9th Cir. 1983), for this proposition. In that case, the Ninth Circuit held that "Section 301(a) does not contain any requirement that the parties to an action brought thereunder must also be the parties to the allegedly breached contract." *Id.* at 1071. "All that is required for jurisdiction to be proper under § 301(a) is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract." *Id.* Here, those requirements are indisputably met. *See also Chicago Area Vending Employers Ass'n v. Local Union No. 761*, 564 F. Supp. 1186, 1192 (N.D. Ill. 1983) (finding jurisdiction

11

under § 301 over a multiemployer bargaining association's lawsuit to enforce a labor agreement against a single employer who was not itself a signatory).

## II.    COUNT II STATES A CLAIM AGAINST BCOA.

Count II is pled in the alternative and is directed solely against Defendant BCOA.  The claim is predicated upon a potential determination that Freeman is obligated to make contributions to the 1974 Plan based on BCOA's 2007 NBCWA Agreement with UMWA.  If the Court makes that determination, then the Court will have concluded that BCOA had the authority to bind Freeman to pay contributions at rates set by BCOA through its negotiations with UMWA, even though Freeman withdrew from BCOA in 1997.  Under the facts pled, that authority carried with it legal duties to Freeman, which BCOA breached, causing Freeman to suffer damages.

BCOA has moved to dismiss Count II pursuant to Rule 12(b)(6).  In considering whether a complaint fails to state a claim for relief, the complaint is to be broadly construed and "should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  To defeat a motion to dismiss, Freeman need only plead facts sufficiently setting forth the essential elements of its cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992); *see also Joyner v. Snyder*, No. 06-3062, 2007 WL 401269 (C.D. Ill. February 1, 2007) (plaintiff is required only to provide a short and plain statement of is claim that will give the defendants fair notice of what the plaintiff's claims is and the grounds upon which it rests).

In its motion, BCOA plucks one phrase from the complaint and argues that Count II is merely a claim for breach of a duty of "good faith and fair dealing," which is allegedly

insufficient to state a claim for relief. (BCOA Mem. at 18-19). However, BCOA misstates

Freeman's claim. Count II asserts a claim for damages for breach of recognized duties BCOA

owed Freeman if it is found that BCOA, through its negotiations with UMWA, had authority to

impose financial obligations on Freeman. The facts alleged establish a relationship between

BCOA and Freeman that imposes legal duties on BCOA in establishing the future contribution

rates to the 1974 Pension Plan, and establish that BCOA breached those duties as part of a

deliberate plan to aid a Freeman competitor.

With respect to the relationship between BCOA and Freeman, Freeman alleged:

- BCOA was the principal collective bargaining forum for unionized coal operators for approximately 50 years. *Complaint*, ¶ 13.

- Freeman was a member of BCOA while BCOA negotiated directly with UMWA for a series of national agreements. *Id.*

- BCOA owed duties to negotiate fairly on behalf of all of its members and to avoid favoring the interests of one member over the interests of others. *Id.*, ¶ 14.

- In negotiating collective bargaining agreements, BCOA and UMWA created a number of pension plans including the 1974 Plan. *Id.*, ¶ 15.

- BCOA negotiated and agreed to the provision commonly referred to as the Evergreen Clause that has been interpreted by one court to bind all members of BCOA, including Freeman, to pay future contributions at rates agreed to by BCOA regardless of whether the members remained members of BCOA. *Id.*, ¶ 19.

- BCOA had actual knowledge that its negotiations regarding contribution rates could under certain conditions bind non-members who were previously parties to BCOA agreements. *Id.*, ¶¶ 50-51. BCOA knew that UMWA and the 1974 Pension Trust would assert that BCOA's agreement regarding contributions was binding on Freeman and other former BCOA members.

- BCOA has actual knowledge that the individual wage agreements negotiated by Freeman and other former BCOA members included Guarantee Clauses that tied contributions to the rates agreed to by BCOA in negotiating certain subsequent national agreements. *Id.*, ¶ 50.

- If BCOA had the authority to bind Freeman to future contribution rates agreed to by BCOA, then it was acting as an actual or implied agent and it owed Freeman fiduciary and other duties. *Id.,* ¶ 53.

As discussed below, these facts establish a relationship that carries legal duties under both federal common law and state law.

Freeman also alleged facts to establish a breach of duty and damages. Freeman alleged:

- At the time it negotiated the 2007 NBCWA Agreement, BCOA was a mere instrumentality of Consolidated Coal Company – a Freeman competitor. *Id.,* ¶¶ 29-37, 41.

- There was no need to increase rates and the factual predicate included in Freeman's 2002 Agreement for increasing contribution rates was not met. *Id.,* ¶¶ 25-26, 38, 41.

- BCOA, as an instrumentality of Consolidated Coal used its ability to negotiate higher contribution rates as a means to give Consolidated Coal a competitive advantage over Freeman and other coal companies by negotiating rate increases that would have far more impact on Freeman than on Consolidated Coal. *Id.,* ¶¶ 40-41.

- If Freeman is obligated to make contributions to the 1974 Plan based on BCOA's 2007 NBCWA Agreement, then Freeman has suffered damages. *Id.,* ¶ 56.

## A.    The Complaint States A Claim Under Federal Common Law.

BCOA's duties arise from its relationship with Freeman with respect to contracts governed by § 301. BCOA negotiated and is a party to collective bargaining agreements containing an "Evergreen Clause," which allegedly gave BCOA perpetual authority to bind Freeman and others to pay contributions to the 1974 Plan at rates set by BCOA. Consistent with the practice in the coal industry, other collective bargaining agreements that had to address contributions to the 1974 Pension Trust—such as Freeman's 2003 Agreement— continued to repose limited authority in BCOA. Because BCOA's duties arise from the parties' relationship surrounding these labor agreements, this Court can look to, and develop, federal common law in

14

giving Freeman a remedy for BCOA's breaches of its the duties. *See Teamsters National Automotive Transporters Industry Negotiating Comm. v. Troha,* 328 F.3d 325, 330 (7th Cir. 2003) ("When the purpose of the lawsuit effectuates the goals of § 301, then it is appropriate for the federal common law to embrace such suits.").

Under federal common law, the relationship between a multi-employer bargaining unit such as BCOA and the members for whom it is bargaining is clothed with elements of agency. *Moriarty v. Glueckert Funeral Home, Ltd.,* 155 F.3d 859, 865 (7th Cir. 1998) ("The basic law of agency ... is a crucial component in our analysis."). And in the specific context of BCOA's ability to raise contribution rates to the 1974 Plan — the very issue presented here — courts have recognized that BCOA acts as an "agent" for the companies that will pay the contributions. *See UMWA v. Bituminous Coal Operators Ass'n,* 898 F.2d 177, 182 (D.C. Cir. 1990). In examining the Evergreen Clause, courts have held that BCOA received authority to negotiate future rate increases even for companies that left BCOA because the pension fund remained in effect and those companies would continue to have certain obligations to the pension fund. *See UMWA 1974 Pension v. Pittston Co.,* 984 F.2d 469, 474 (D.C. Cir. 1993). While Freeman submits that this Court should reach a different conclusion, these prior holdings reinforce the duties BCOA owes if it had such authority.

It is well established that an agency relationship carries with it duties that are fiduciary in nature. *See* RESTATEMENT (SECOND) OF AGENCY, §13 (1958). These include the general duties of acting in good faith and not favoring the interests of others over the interests of Freeman. *See id.* In the context of multi-employer bargaining units, federal courts have recognized the existence of these specific duties. *See, e.g., NLRB v. Siebler Heating & Air Conditioning, Inc.,* 563 F.2d 366, 371 (8th Cir. 1977) ("Multi-employer bargaining will work only when the

interests of all parties to the bargaining are fairly represented" and "an employer or group of employers has a right to expect that his or their interests will be fairly represented in negotiations and that their interests will not be totally sacrificed in the interests of the majority."); *Resort Nursing Home & Kingsbridge Heights Rehab. Care Ctr. v. NLRB*, 389 F.3d 1262, 1269-70 (D.C. Cir. 2004) (where a multi-employer bargaining association violates an agreement to provide notice to its members before beginning negotiations "common law agency principles" apply and "the employers remedy would be against its agent").

Moreover, in determining federal common law, the Court can look to state common law principles. As discussed below, state common law recognizes that legal duties may arise from the nature of particular relationships and the ability of one party to make decisions for the other. These principles support a finding that BCOA owed duties to Freeman under federal common law in the labor relations arena. Because the linchpin of BCOA's motion is that it owed no legal duties, BCOA's argument fails.

**B.      The Complaint States a Claim Under State Law**.

Under Illinois law, fiduciary duties may arise as a result of the special circumstances of the parties' relationship, particularly where trust is reposed on one side and there is resulting superiority and influence on the other. *See Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 825 (N.D. Ill. 2006); *Northern Trust Co. v. MS Securities Servs, Inc.*, No. 05 C 3370, 05 C 3373, 2006 WL 695668, *11 (N.D. Ill. March 15, 2006); *Ransome v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 682 N.E. 2d 314, 322 (1st Dist. 1997) (fiduciary duty arises as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains influence over the former). Whether fiduciary duties arise from the relationship is a factual inquiry dependent on the particular facts of each case. *See id*; *see also Metropulos v.*

*Chicago Art Glass, Inc.*, 156 Ill. App. 3d 727, 736, 509 N.E. 2d 1068, 1074-1074 (2d Dist. 1987) (citing *Taino v. Sanchez*, 147 Ill. App. 3d 871, 874, 101 Ill. Dec. 247, 498 N.E. 2d 571 (1st Dist. 1986) ("Whether or not a fiduciary relationship exists between the parties depends upon the facts in each case.")).

Freeman has alleged facts that would support a fact-finder's determination that BCOA owed fiduciary duties. The facts alleged, coupled with the predicate that the Court has determined that Freeman is obligated to pay rates set by BCOA, establish a relationship in which BCOA was entrusted to act in a narrow area — the setting of future contribution rates. BCOA undertook that responsibility knowing that its actions would impose significant financial obligations on Freeman and others. And in that limited area, BCOA was acting as agent for Freeman even *after* Freeman left BCOA.[3] These facts establish that Freeman has alleged each of the elements of a claim for breach of fiduciary duty under state law. *See LaSalle Bank Lake View v. Seguban*, 937 F. Supp 1309, 1324 (N.D. Ill 1996) (elements of cause of action are (1) existence of duty, (2) breach, and (3) damages).

Freeman anticipates that BCOA may argue that any state law claim is preempted by federal law; that argument is for another day. Any such argument concedes the validity of Freeman's claim under federal law. But in fact the two claims exist concomitantly. Section 301 does not preempt a state law claim unless the resolution of the state law claim is substantially dependent upon an interpretation of the terms of a collective bargaining agreement. *See Lingle v.*

---

[3]    BCOA cites Restatement (Second) of Agency § 386 for the proposition that an "agent has duty not to act as such when relationship terminated." (BCOA Mem. at 19). However, BCOA omits the critical part of this restatement: "*Unless otherwise agreed,* an agent is subject to a duty not to act as such after the termination of his authority." Here, to the extent that the Evergreen and Guarantee Clauses gave BCOA the authority to bind Freeman, BCOA continued to act as Freeman's agent and owed Freeman duties with respect to setting future contribution rates even after Freeman left the BCOA.

*Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405-06 (1988) (Section 301 will preempt a state law claim "if the resolution of [the] state-law claim depends upon the meaning of a collective bargaining agreement"); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (Section 301 preemption occurs "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract..."). The mere fact that a collective bargaining agreement may be relevant to the state law dispute does not warrant its preemption. *See Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished."). To determine whether the resolution of a state law claim depends upon an interpretation of the terms of a collective bargaining agreement, courts examine the elements of the state law claim. *See Loewen Group Int'l., Inc. v. Haberichter*, 65 F.3d 1417, 1422 (7th Cir. 1995). In this case, the elements of Freeman's state law breach of fiduciary duty claim against BCOA (existence of such duty, breach of that duty, and resultant damages) make clear that the resolution of Freeman's claim does not depend upon an interpretation of the terms of any collective bargaining agreement, Freeman's state law breach of fiduciary duty claim against BCOA is not preempted and should not be dismissed.

### III.    DEFENDANTS FAILED TO MEET THEIR BURDEN TO TRANSFER THIS ACTION TO THE DISTRICT OF COLUMBIA.

Over a month after Freeman filed the instant action, the 1974 Pension Trust filed a parallel lawsuit in the District of Columbia under ERISA and § 301 of the LMRA against Freeman and eight other coal companies for failure to pay contributions to the Pension Trust. All of the Defendants have moved in the alternative, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the District of Columbia to be adjudicated with their later-filed D.C. action. Those motions should be denied.

In *Rupnik v. Knauf Insulation GMBH*, No. 06-3131, 2006 WL 2945442 (C.D. Ill. Oct. 13, 2006), this Court set forth the standards for transfer under § 1404(a). Where, as here, venue is proper both in this district[4] and in the proposed transferee district, "the issue then is the convenience of the parties and witnesses, and the interest of justice." *Id.* at *2. In determining the convenience of each proposed forum, the Court should consider: "(1) the Plaintiff's choice of forum; (2) the location of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties." *Id.* at *3. "Deference must be given to a plaintiff's chosen forum." *Id.* The interest of justice analysis focuses on the efficient administration of the judicial system, as opposed to the private consideration of the litigants. *Bowe Bell + Howell Co.*, 2004 WL 1244143 at *7.

Defendants have the burden of showing that the balance of the relative convenience of the two districts "clearly favors" the transferee district. "Unless there is a clear difference in convenience, the plaintiff's choice of forum is determinative." *Gallery House, Inc. v. Yi*, 587 F.

---

[4] Contrary to the arguments raised by Defendant 1974 Pension Trust, venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in the Central District of Illinois. *See* Dame Affidavit, Ex. A; *see also Emjayco v. Morgan Stanley & Co., Inc.*, 901 F. Supp. 1397, 1400 (C.D. Ill. 1995); *Moore's Federal Practice*, § 110.04[2] (venue statute broadly construed).

19

Supp. 1036, 1040 (N.D. Ill 1984); *see also In re: National Presto Ind., Inc*, 347 F.3d 662, 664

(7th Cir. 2003) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of

forum should rarely be disturbed"); *Warshawsky & Co. v. Arcata Nat. Corp.* 552 F.2d 1257,

1259 (7th Cir. 1977) (plaintiff's choice of forum entitled to "great weight and was not lightly to

be disturbed"; "defendants must establish that the balance of interest weighed strongly in favor

of transfer if they were to prevail on their transfer motion"); *Central States v. LaClasse*, 254 F.

Supp. 2d 1069, 1073 (C.D. Ill. 2003) (defendants have the burden of proof to show another

jurisdiction is "clearly more convenient").  Also, to meet their burden of proof, Defendants must

do more than offer "vague and conclusory" notions.  *Estwing Man Co. v. Cal Rainbow Products,*

*Inc.*, No. 01 C 0276, 2001 WL 664396, *2 (N.D. Ill. June 11, 2001).

     For the many reasons discussed below, Defendants have not met their burden to transfer

this action from the Central District.  Accordingly, Freeman's choice of forum should not be

disturbed.

     **First**, Freeman's principal place of business is located in this district and it negotiated

and administered the 2003 Freeman Agreement here.  *See* Dame Affidavit, Ex. A.  Accordingly,

Freeman's choice of forum in the Central District is accorded substantial weight.  *See Vlasic v.*

*Wyndham Int., Inc.*, 451 F. Supp. 2d 1005, 1008 (C.D. Ill. 2006) ("There is a strong presumption

that the plaintiff's choice of forum will be upheld especially in situations where the plaintiff

chooses his home forum"); *Indianapolis Motor Speedway v, Polaris Ind. Inc.*, No. IP 99-1190-C-

B/S, 2000 WL 777895 (S.D. Ind. April 28, 2000) (there is a rebuttable presumption that the first

case should be allowed to proceed and the second case abated); *Law Bulletin Pub. Co. v. LRP*

*Pub., Inc.*, 992 F. Supp. 1014 (N.D. Ill. 1998) ("A plaintiff's chosen forum is entitled to

substantial deference, particularly where the chosen forum is the plaintiff's home forum.").

Although there is a strong presumption that the first-filed action should proceed, courts in this Circuit have not "rigidly applied" the first-filed rule.  For example, some courts in their discretion have declined to follow the first-filed rule where there was an improper "anticipatory filing," such as where the plaintiff "raced to the courthouse" after receiving notice that Defendants intended to sue, or where the plaintiff otherwise engaged in bad faith conduct.  *See Tempco Elec. Heater Corp. v. Omega Eng'g , Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) (alleged trademark infringer filed a declaratory judgment action after defendant, which owned the trademark, threatened litigation; court dismissed action in favor of later-filed damages action); *Indianapolis Motor Speedway*, 2000 WL 777895 (discussing circumstances where courts have not followed first-filed rule, but distinguishing those cases because defendant, which had filed earlier declaratory action, did not engage in bad faith conduct and the cause of action had accrued).

However, in ERISA actions like this, courts have regularly allowed first-filed declaratory judgment actions to proceed where, as here, the plaintiff resides in the forum district and other relevant activity occurred there.  In *Bowe Bell + Howell Co. v. IMMCO Employees' Ass'n*, No. 03-8010, 2004 WL 1244143, *6-7 (N.D. Ill. June 2, 2004), for example, the plaintiff filed an ERISA declaratory judgment action in the Northern District of Illinois, plaintiff's corporate headquarters and principal place of business were located there, and the Plan was administered there.  Accordingly the Court gave the plaintiff's choice of forum "substantial deference" and refused to transfer plaintiff's declaratory judgment action to the Eastern District of Pennsylvania where retirees had filed a coercive action.  *Id.* at *6.  Similarly, in *BorgWarner Diversified Transmission Prods., Inc. v. United Auto., Aerospace, and Agric. Implement Workers*, No. 06-058, 2006 WL 1328723, *4-5 (S.D. Ind. May 12, 2006), the court did not abstain from hearing

21

the plaintiff's declaratory judgment action under ERISA despite the fact that a mirror coercive action had been filed in Michigan federal court because, *inter alia*, the agreements were negotiated in Indiana and the events giving rise to the dispute occurred in Indiana. The court found that *Tempco* did not apply because plaintiff did not engage in "procedural fencing" and plaintiff had a "vast number of contracts and alleged interests" in the forum. *See id.; see also Reynolds*, 758 F. Supp. at 1281-82 (holding that the plaintiff's declaratory judgment action under ERISA should move forward despite the fact that the defendants in the declaratory judgment action filed a coercive action against the plaintiff in federal court in Georgia); *Dugan v. D&M Excavating, Inc.*, No. 90 C 0495, 1990 WL 70345, *1 (N.D. Ill. May 10, 1990) (dismissing coercive ERISA action in favor of first-filed declaratory action; stating that *Tempco* "emphasized the discretion of the court" and did not hold that declaratory actions must defer to the coercive action).

As recognized in *Indianapolis Motor Speedway*, many of the cases that decline to follow the first-filed rule are, like *Tempco*, trademark infringement or misappropriation actions where there was a "natural plaintiff" that was wrongfully deprived of its choice of forum. There is no "natural plaintiff" in this breach of contract action. As discussed in Part I, *supra*, rather than filing this declaratory judgment action, Freeman could have paid the contested amount to the 1974 Pension Trust and then filed suit to seek restitution. That difference should not impact whether Freeman's first-filed lawsuit should be allowed to proceed. *See, e.g., American Cas. Co. v. Filco*, No. 04 C 3782, 2004 WL 2674309, *2 (N.D. Ill. Oct. 15, 2004) (denying transfer in breach of insurance contract action and allowing insurer's declaratory judgment action to proceed; court rejected argument that the insured is the "true plaintiff"); *TransCanada Power Marketing, Ltd. v. Narragansett Electric Co.*, 402 F. Supp. 2d 343, 348 n.7 (D. Mass. 2005) (in

22

denying transfer court stated "there does not appear to be a so-called 'natural' plaintiff" in a breach of contract action between a retailer and wholesaler). Moreover, as evidenced by the recently filed District of Columbia action, the Defendants effectively concede that this matter is ripe for resolution and is therefore consistent with the Declaratory Judgment Act's central purpose of affording "relief from uncertainty and insecurity with respect to legal relations." *Haskett v. Reliv' Int'l, Inc.*, No. 94 C 1461, 1994 WL 171431, *4 (N.D. Ill. May 3, 1994) (transferring action to Central District of Illinois where first-filed declaratory judgment action was pending).

**Second**, contrary to Defendants' argument, many material events occurred in the Central District of Illinois, and not just Freeman's "final, triggering decision" not to pay the contested amount. (Trust Mem. at 11). As set forth in the Dame Affidavit:

1. Freeman's headquarters is located in Springfield, Illinois and its principal place of business is located in Macoupin County, Illinois. All of Freeman's current employees work in Illinois.

2. The majority of Freeman's retirees live in Illinois and they receive benefit payments from the 1974 Plan in Illinois. Each time a Freeman employee retires, Freeman receives a letter from the 1974 Plan that describes that retiree's total years of service and vested benefit under the 1974 Plan.

3. All of the many internal Freeman strategy discussions regarding negotiations for a new labor agreement took place at Freeman's headquarters in Springfield, Illinois.

4. The principal negotiator for UMWA for the 2003 Freeman Agreement was Joseph Angleton. Mr. Angleton was assisted in negotiations by Bill Brumfield, Art Ament, Jim Bolton, Greg Mahan, Paul Perrine, Gary Butler, Dennis Baum, and Don Timo of UMWA. At the time of the negotiations, these UMWA representatives all worked and/or resided in Illinois and, on information and belief, still work or reside here. Neither Mr. Angelton nor Mr. Brumfield is currently employed by UMWA. Mr. Angleton is currently the Director of the Illinois Office of Mines and Minerals, which is headquartered in Springfield, Illinois.

5. The 2003 Freeman Agreement was negotiated by the parties in a series of meetings and exchanges of proposals that took place at the Crowne Plaza Hotel in Springfield, Illinois during 2002 and 2003. The 2003 Freeman agreement was voted on and ratified in Macoupin County, Illinois.

23

6.  The 2003 Freeman Agreement is administered entirely in Springfield and in Macoupin County, Illinois.

(Ex. A at ¶¶ 3-9.)

Courts have denied transfer under a similar set of facts. *See, e.g., Hinc v. Lime-O-Sol Co.*, 231 F. Supp. 2d 795, 796 (N.D. Ill. 2002) (in denying a motion to transfer the Court held: "The plaintiff resides in the district, negotiation with [defendant] by email and telephone from the district and signed his copy of the contract in the district. Thus the plaintiff's choice weighs against removal.").

**Third**, the convenience of the witnesses is often considered one of the most important factors. *Law Bulletin Pub. Co. v. LRP Pub., Inc.*, 992 F. Supp. 1014, 1018 (N.D. Ill. 1998). In order to establish this factor, the Defendants must make the following showing:

> The defendant is obligated to specify particular witnesses to be called and explain the nature of their testimony. In order to overcome the deference to the plaintiff's forum choice on the issue of witness convenience, the defendant must show that the testimony of these particular witnesses is necessary to his case. As a practical matter, it is usually assumed that witnesses within the control of the parties will appear voluntarily. Therefore, more attention should be given to the location of the non-party witnesses and those witnesses not within the control of the parties.

*American Family Ins. v. WalMart Stores, Inc.*, No. 02 C 8017, 2003 WL 1895390, *2 (N.D. Ill. April 17, 2003) (citations omitted). However, no Defendant has provided even a witness list or the substance of any witness testimony. Defendant UMWA merely states: "Likewise, given the nature of the case, it is likely that many of the witnesses involved would be representatives of these parties [located in D.C.]." (UMWA Mem. at 16). This is plainly insufficient. Defendants have not met their burden on this issue.

**Fourth,** the relative ease of access to sources of proof and the convenience of the parties do not favor transfer. Defendants have not suggested that relevant documents cannot be brought

24

into this district or that they cannot travel to this district.[5]  Forcing Freeman and its witnesses to travel to the District of Columbia is simply "shifting the burden of inconvenience from one party to the other [which] is not a valid justification for transfer." *Central States v. LaClasse*, 254 F. Supp. 2d 1069, 1073 (C.D. Ill. 2003).

**Finally,** the interests of justice weigh against transfer.  As discussed above, this analysis focuses on the efficient administration of the judicial system and considers:  "(1) the relative familiarity of the courts with the applicable law; (2) the relation of the respective forums with the issues in the case, and (3) the relative congestion of the courts' dockets." *Bowe Bell + Howell Co.,* 2004 WL 1244143 at *7.

Defendants argue that the D.C. Court is allegedly more familiar with the applicable law because *In re United Mine Workers of America Benefit Plan Litigation*, 782 F. Supp. 658 (D.D.C. 1992), *affirmed United Mine Workers of American 1974 Pension Plan v. Pittston Co.*, 984 F.2d 469 (D.C. Cir. 1993), concerned the application of the Plan's "Evergreen Clause." (UMWA Mem. at 15.)  However, the fact that the D.C. Court addressed the "Evergreen Clause" on an earlier occasion has no relevance to Defendants' transfer motion.  This Court is well equipped to apply federal law and is equally familiar with the federal ERISA statutes.  *See Bowe Bell + Howell Co.*, 2004 WL 1244143 at *7 (finding federal courts equally familiar with the ERISA law "and this factor does not weigh in favor of transfer");  *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) (familiarity with the law applies in diversity actions where it is considered advantageous to have federal judges try a case who are familiar

---

[5] In fact, recently, UMWA chose to litigate a case in the Southern District of Illinois involving an employer's alleged ERISA plan obligations under the provisions of its collective bargaining agreement.  See *UMWA v. Brushy Creek Coal Co*., 410 F.Supp.2d 723 (S.D. Ill. 2006) (bringing an action against an employer under both § 301 of the LMRA and § 502 of ERISA in the Southern District of Illinois).

with the applicable state law); *Royal Insurance*, 998 F. Supp. at 355 (holding that familiarity

with the law factor does not apply where federal law governs: "All federal courts are presumed

to be fully capable of applying nationally applicable legal principles.") Therefore, contrary to

BCOA's baseless allegation, this action is not "a ploy" to avoid application of any federal

precedent from the D.C. Circuit or any other federal court. (BCOA Mem. at 21).

The relative congestion of the two courts' dockets also weighs against transfer. "When

evaluating which forum is likely to produce a quicker answer, courts often look at "(1) the

median months from filing to disposition for civil cases and (2) the median months from filing to

trial for civil cases." *Washington Nat. Life Ins. Co. v. Calcasieu Parish School Board,* No. 05 C

2551, 2006 WL 1215413, *12 (N.D. Ill. May 2, 2006). In the Central District, it is 8.7 months to

disposition and 30 months to trial for civil cases; in D.C., it is 10.2 months and 37 months,

respectively. (*See* Ex. B). The Central District is somewhat less congested than the District of

Columbia, which favors denial of the transfer motion.

Finally, Defendants have argued that the "interest of justice" favors transfer because in

the 1974 Pension Trust's later-filed suit it named eight other defendants besides Freeman, and

this Court allegedly lacks jurisdiction to join those other defendants. This argument is entirely

contrived. The 1974 Pension Trust voluntarily chose to name additional defendants in its D.C.

lawsuit. Moreover, unlike the 2003 Freeman agreement, which contains a Guarantee Clause,

some if not all of the other D.C. defendants' collective bargaining agreements have expired. For

those D.C. defendants, the Guarantee Clause — a key issue in Freeman's claim in this Court —

may no longer be applicable. Also, because their collective bargaining agreements have expired,

the D.C. defendants have the ability to cease pension contributions subject to certain federal

labor law conditions. *See Laborers Health & Welfare Trust Fund for N. Ca. v. Advanced*

26

*Lightweight Concrete Co., Inc.*, 484 U.S. 539, 544 (1988).  Accordingly, the other D.C. defendants will likely raise issues and defenses that are completely different from the claims in this case.

For all of the foregoing reasons, the Court should deny Defendants' motions to transfer. Defendants have failed to meet their burden of proving that the relative convenience or the interests of justice "strongly" or "clearly" favor the District of Columbia.  Instead, Defendants have offered, at best, vague and conclusory arguments in support of their transfer motion.  The "great weight" that is accorded to Freeman's choice of forum should not be disturbed.

## **Conclusion**

The Court has subject-matter jurisdiction over this matter, Count II states a claim for relief, and this matter belongs in the Central District.  Therefore, this Court should deny Defendants' motions to dismiss or, in the alternative, to transfer.

Respectfully submitted,

FREEMAN UNITED COAL MINING
COMPANY


By: ___/s/ Susan C. Levy___
        One of their attorneys

Susan C. Levy (*Lead Counsel*)
Aaron M. Forester
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel (312) 923-2772
Fax (312) 840-7772

Gregory J. Ossi
Michael W. Robinson
Venable LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
Tel (703) 760-1600
Fax (703) 821-8949

*Counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(b)(4), I hereby certify that the forgoing Response To Defendants' Motion To Dismiss and/or To Transfer complies with this Court's type-volume limitation in that it contains 43,938 characters.

/s/ Aaron M. Forester

## CERTIFICATE OF SERVICE

I, Aaron M. Forester, an attorney, certify that on April 16, 2007, I served the foregoing Response To Defendants' Motion To Dismiss and/or To Transfer, by causing a true and correct copy of the same to be delivered via the Court's ECF system to:

**Peter Buscemi**
**Charles Groppe**
**Charis A Runnels**
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004

**Julia Penny Clark**
**Charlotte Garden**
**Devki K Virk**
BREDHOFF & KAISER LLC
Suite 1000
805 Fifteenth St NW
Washington, DC 20005

**John T Long**
CAVANAGH & O'HARA
407 East Adams
PO Box 5043
Springfield, IL 62705

**John R Mooney**
**Mark Murphy**
**Richard C Welch**
MOONEY GREEN BAKER & SAINDON PC
Suite 400
1920 L Street NW
Washington, DC 20036

**Carol Hansen Posegate**
POSEGATE & DENES PC
111 N 6th St Suite 200
Springfield, IL 62701

**Deborah Stern**
UNITED MINE WORKERS OF AMERICA
8315 Lee Highway
Fairfax, VA 22031

By:  ___/s/ Aaron M. Forester___

Aaron M. Forester
Ill. Bar. No: 6282885
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel (312) 923-2772
Fax (312) 840-7772
aforester@jenner.com

*Counsel for Plaintiff*

**E-FILED**
Monday, 16 April, 2007  04:54:57 PM
Clerk, U.S. District Court, ILCD

# **<u>Exhibit A</u>**

## Affidavit of Donald H. Dame

I, Donald H. Dame, the undersigned, do solemnly swear and affirm:

1. I am a person of lawful age having personal knowledge of the facts related here. I understand that this Affidavit is made in support of the complaint of Freeman United Coal Mining Company ("Freeman") filed in response to the demand for increased contributions to the UMWA 1974 Pension Plan and Trust ("1974 Plan").

2. For seven years, and for all times relevant to the negotiation and execution of the Freeman United Coal Mining Company and United Mine Workers of America Bituminous Coal Wage Agreement of 2003 ("2003 Freeman Agreement"), I was employed by Freeman as the Vice President of Human Resources and Government Relations. I am currently employed by National Steel and Shipbuilding Company in San Diego, California.

3. Freeman's headquarters is located in Springfield, Illinois and its principal place of business is located in Macoupin County, Illinois where it conducts coal mining at the Crown II and Crown III mines. All of Freeman's current employees work in Illinois.

4. In early 2002, Freeman began planning its strategy for a new labor agreement with the UMWA. Several employees of Freeman were involved in developing this strategy, including Walter Gregory, President, Michael Caldwell, Vice President of Operations and myself. All of the many internal Freeman strategy discussions regarding negotiations for a new labor agreement took place at Freeman's headquarters in Springfield, Illinois.

5. Freeman began bargaining with the UMWA for a new labor agreement in April of 2002. I was Freeman's principal negotiator of the 2003 Freeman Agreement and I was Freeman's principal negotiator for the predecessor agreement signed in 1998. A Freeman employee, Trudy Manis, took notes for Freeman at each bargaining meeting and such notes reside at Freeman's headquarters in Springfield.

6. The principal negotiator for the United Mine Workers of America ("UMWA") for the 2003 Freeman Agreement was Joseph Angleton. Mr. Angleton was assisted in negotiations by Bill Brumfield, Art Ament, Jim Bolton, Greg Mahan, Paul Perrine, Gary Butler, Dennis Baum and Don Timo of the UMWA. At the time of the negotiations, these UMWA representatives all worked and/or resided in Illinois. It is my belief that each of these UMWA representatives still work and/or reside in Illinois. I believe neither Mr. Angelton nor Mr. Brumfield currently are employed by the UMWA. Mr. Angleton is currently the Director of the Illinois Office of Mines and Minerals, which is headquartered in Springfield, Illinois.

224390

7. The 2003 Freeman Agreement was negotiated by the parties in a series of meetings and exchanges of proposals that took place at the Crowne Plaza hotel in Springfield, Illinois during 2002 and 2003. The 2003 Freeman agreement was voted on and ratified at the Crown II and Crown III mines in Macoupin County, Illinois.

8. The 2003 Freeman Agreement is administered entirely in Springfield and the Macoupin County of Illinois. As part of the administration of the 2003 Freeman Agreement, Freeman reviews the hours worked by its UMWA-represented employees and prepares and approves the remittance form to the UMWA Health and Retirement Funds. This remittance form is prepared by Victor Vencill, Freeman's Chief Financial Officer and enumerates the contributions required by the 2003 Freeman Agreement and owed to the various Plans administered by the UMWA Health and Retirement Funds, including the 1974 Plan.

9. The majority of Freeman's retirees live in Illinois and they receive benefit payments from the 1974 Plan in Illinois. Each time a Freeman employee retires, Freeman receives a letter from the 1974 Plan that describes that retiree's total years of service and vested benefit under the 1974 Plan.

I declare and affirm under penalty of perjury under the laws of the United States of America that the foregoing Affidavit is true and correct.

Donald H. Dame

Date  4/12/07

C:\Documents and Settings\n59094\Local Settings\Temporary Internet Files\OLK38\MC1DOCS1-#224390-v4-GD_Affidavit_of_Don_Dame.DOC

E-FILED
Monday, 16 April, 2007  04:55:35 PM
Clerk, U.S. District Court, ILCD

**EXHIBIT B**

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **DISTRICT OF COLUMBIA** | | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing |
| | | | | | | | | | | U.S. / Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | | 2,947 | 3,383 | 3,121 | 3,461 | 3,382 | 3,377 | U.S. \| Circuit |
| | Terminations | | | 3,458 | 3,305 | 3,365 | 3,101 | 3,159 | 3,291 | |
| | Pending | | | 4,114 | 4,634 | 4,422 | 4,656 | 4,338 | 4,151 | |
| | % Change in Total Filings | Over Last Year | | | -12.9 | | | | | 84 | - |
| | | Over Earlier Years | | | | -5.6 | -14.9 | -12.9 | -12.7 | 69 | - |
| | Number of Judgeships | | | 15 | 15 | 15 | 15 | 15 | 15 | |
| | Vacant Judgeship Months** | | | .0 | .0 | .0 | 3.1 | 17.1 | 27.4 | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | | 197 | 226 | 208 | 231 | 225 | 225 | 91 | - |
| | | Civil | | 159 | 180 | 163 | 184 | 179 | 197 | 86 | - |
| | | Criminal Felony | | 25 | 30 | 32 | 35 | 34 | 28 | 92 | - |
| | | Supervised Release Hearings** | | 13 | 16 | 13 | 12 | 12 | - | 73 | - |
| | Pending Cases | | | 274 | 309 | 295 | 310 | 289 | 277 | 80 | - |
| | Weighted Filings** | | | 239 | 272 | 261 | 280 | 271 | 284 | 88 | - |
| | Terminations | | | 231 | 220 | 224 | 207 | 211 | 219 | 88 | - |
| | Trials Completed | | | 7 | 10 | 15 | 15 | 12 | 12 | 93 | - |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | | 14.4 | 12.9 | 12.8 | 10.2 | 9.6 | 7.7 | 90 | - |
| | | Civil** | | 10.2 | 10.8 | 10.3 | 10.3 | 10.5 | 9.8 | 56 | - |
| | From Filing to Trial** (Civil Only) | | | 37.0 | 35.0 | 27.4 | 25.0 | 29.0 | 24.0 | 74 | - |
| OTHER | Civil Cases Over 3 Years Old** | Number | | 433 | 468 | 408 | 445 | 359 | 282 | | |
| | | Percentage | | 15.1 | 14.1 | 12.8 | 12.7 | 11.1 | 8.6 | 83 | - |
| | Average Number of Felony Defendants Filed Per Case | | | 1.4 | 1.5 | 1.5 | 1.3 | 1.4 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | | 70.60 | 86.63 | 75.49 | 85.69 | 93.32 | 69.99 | | |
| | | Percent Not Selected or Challenged | | 47.2 | 53.6 | 50.4 | 56.6 | 55.7 | 51.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2382 | 22 | 35 | 491 | 28 | 21 | 135 | 228 | 209 | 42 | 514 | 61 | 596 |
| Criminal* | 367 | 1 | 106 | 12 | 63 | 78 | 20 | 10 | 2 | 13 | 5 | 26 | 31 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **ILLINOIS CENTRAL** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 1,429 | 1,532 | 1,519 | 1,552 | 1,711 | 1,660 | | |
| | Terminations | 1,497 | 1,552 | 1,478 | 1,595 | 1,704 | 1,569 | | |
| | Pending | 1,216 | 1,279 | 1,293 | 1,277 | 1,339 | 1,345 | | |
| | % Change in Total Filings — Over Last Year | | -6.7 | | | | | 59 | 5 |
| | % Change in Total Filings — Over Earlier Years | | | -5.9 | -7.9 | -16.5 | -13.9 | 73 | 5 |
| | Number of Judgeships | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | .0 | .0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 358 | 383 | 380 | 389 | 428 | 415 | 68 | 6 |
| | FILINGS — Civil | 255 | 285 | 286 | 284 | 317 | 340 | 63 | 7 |
| | FILINGS — Criminal Felony | 75 | 70 | 69 | 85 | 91 | 75 | 42 | 3 |
| | FILINGS — Supervised Release Hearings** | 28 | 28 | 25 | 20 | 20 | - | 30 | 2 |
| | Pending Cases | 304 | 320 | 323 | 319 | 335 | 336 | 73 | 6 |
| | Weighted Filings** | 349 | 370 | 377 | 382 | 427 | 424 | 74 | 7 |
| | Terminations | 374 | 388 | 370 | 399 | 426 | 392 | 67 | 6 |
| | Trials Completed | 33 | 27 | 26 | 21 | 19 | 24 | 8 | 1 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 8.8 | 11.5 | 9.1 | 8.4 | 8.3 | 7.9 | 44 | 3 |
| | From Filing to Disposition — Civil** | 8.7 | 8.6 | 9.0 | 8.3 | 7.5 | 7.3 | 30 | 4 |
| | From Filing to Trial** (Civil Only) | 30.0 | 28.0 | 25.4 | 23.5 | 26.0 | 27.0 | 63 | 7 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 29 | 26 | 21 | 16 | 23 | 25 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 3.1 | 2.6 | 2.1 | 1.6 | 2.2 | 2.2 | 16 | 3 |
| | Average Number of Felony Defendants Filed Per Case | 1.3 | 1.2 | 1.1 | 1.2 | 1.3 | 1.3 | | |
| | Jurors — Avg. Present for Jury Selection | 17.41 | 29.66 | 33.34 | 28.79 | 32.98 | 38.74 | | |
| | Jurors — Percent Not Selected or Challenged | 22.5 | 25.6 | 31.8 | 26.4 | 30.7 | 41.8 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1021 | 48 | 29 | 336 | 9 | 64 | 99 | 90 | 59 | 45 | 173 | 1 | 68 |
| Criminal* | 291 | 7 | 103 | 25 | 66 | 29 | 12 | 16 | 11 | 7 | 3 | 3 | 9 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."