# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Holland, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 07-cv-490 (PLF) |
| Freeman United Coal Mining Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Freeman United Coal Mining Company, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-cv-1050 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| United Mine Workers of America, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## BCOA'S OPPOSITION TO FREEMAN UNITED'S RULE 56(f) MOTION TO DENY OR STAY RULING ON PENDING MOTIONS FOR SUMMARY JUDGMENT

The Bituminous Coal Operators' Association, Inc. ("BCOA"), a defendant in Case No. 07-cv-1050 that has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, hereby opposes the motion of plaintiff Freeman United Coal Mining Company ("Freeman") to deny or stay ruling on the pending motions for summary judgment until further discovery can be taken by Freeman. For the reasons set forth below, Freeman's motion fails to satisfy the requirements of Fed. R. Civ. P. 56(f) and should be denied.

1.       Rule 56(f) "provides that a court *may* deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control and Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (emphasis in original).  A party making a Rule 56(f) request, however, must state concretely why additional discovery is necessary, *American Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*, 502 F.Supp.2d 103, 106 (D.D.C. Aug. 2007) (citations omitted), and bears the burden of "identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion." *Bancoult v. McNamara*, 217 F.R.D. 280, 283 (D.D.C. 2003) (citations omitted).  Mere conclusory assertions without supporting facts to justify the proposition that the discovery sought will produce the evidence required are insufficient to carry this burden.  *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006).

2.       Nowhere in its motion does Freeman demonstrate why, under this standard, additional discovery is necessary.  Freeman fails to identify with the degree of specificity required by Rule 56(f) what additional facts would create triable issues, and instead merely recites conclusory assertions that additional discovery is needed.  Because the procedure under Rule 56(f) "is designed to prevent fishing expeditions by narrowing the scope of discovery and affording the trial court the showing necessary to assess the merit of a party's opposition," *Hotel & Rest. Employees Union, Local 25 v. United States*, 804 F.2d 1256, 1269, *vacated on other grounds*, 808 F.2d 847 (D.C. Cir. 1987), Freeman has not satisfied the requirements of Rule 56(f).

3.      Freeman's motion under Rule 56(f) is just four pages long, and purports to rely on an affidavit from Freeman's counsel, Susan Levy, to establish the facts that would create a triable issue in response to BCOA's motion for summary judgment. *See* Freeman Motion at 3, referring to Levy affidavit (which actually is a declaration).  An examination of the substance of the Levy declaration, however, reveals that it consists entirely of (a) conclusory assertions, (b) a rehash of the legal issues presented, (c) a descriptive summary of Freeman's broad discovery requests and the responses thereto, (d) speculative "doubts" that BCOA and the UMWA have produced all of the documents requested, and (e) assertions that discovery has barely commenced and depositions have not been taken.  As shown below in an analysis of each of the 16 numbered paragraphs of the Levy Declaration, this declaration plainly is not sufficient to satisfy the requirements of Rule 56(f).

(a)      Conclusory Allegations.  After two introductory paragraphs, paragraphs 3, 4, 5, 6, and 16 of the Levy declaration simply state that Freeman has sought discovery from the Trustees, the UMWA, the BCOA, and Consolidation Coal Company, seeking documents that Freeman believes are "critical" or "essential" or "vital" to its ability to oppose the pending motions for summary judgment.  Such conclusory assertions, however, do not identify the facts to be discovered that would create a triable issue, and thus are insufficient to satisfy Rule 56(f) or defeat BCOA's motion for summary judgment. *See, e.g.*, *Byrd v. EPA*, 174 F.3d 239, 248 n. 8 (D.C. Cir. 1999).  ("It is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact.") (citation omitted).

(b)      Rehash of the Legal Issues Presented.  Paragraph 7 of the Levy declaration simply restates the dates (September 7 and 10, 2007) that the pending motions for summary judgment were filed with the Court.  Paragraph 8 of the Levy declaration, after discussing the

Trustees' responses to Freeman's discovery requests, merely consists of Freeman's characterization of the two legal issues presented in this case. Specifically, the declaration states that this case raises "two new issues that were not addressed in *Pittston:* whether an agreement between the UMWA and the BCOA can still be a 'successor' agreement even if the BCOA is no longer a multi-employer bargaining unit; and (2) whether a single-company agreement can somehow be transformed after the fact into a 'successor' national agreement, when other unwilling coal companies are coerced, frequently through strikes or threats of strikes, to sign 'me too' agreements." Even accepting for purposes of this opposition Freeman's characterizations of the issues in dispute, these assertions simply highlight the legal issues that are fully addressed in BCOA's motion for summary judgment and reply brief. Nowhere does this declaration state concretely the facts to be discovered that allegedly are essential to opposing BCOA's motion for summary judgment. *See, e.g. Bolger v. District of Columbia*, 510 F.Supp.2d 86, 2007 WL 2601416, at p. 4 (D.D.C. 2007) (plaintiff must show "what facts he intends to discover that would create a triable issue and why he could not produce them in opposition of the motion.") (citations omitted).

(c)    Summary of the Discovery Requested and Produced to Date. Much of the Levy declaration is merely descriptive in nature, characterizing in general terms what discovery Freeman has requested and the extent to which the Trustees, the UMWA, and BCOA have responded, not responded, and/or objected to Freeman's requests. *See* Levy Declaration, paragraphs 8, 9, 10, 11, 12, and 13. In so doing, however, the Levy declaration completely fails to demonstrate what specific facts this discovery would produce, and how those facts are material and essential to responding to BCOA's motion for summary judgment. Statements such as "the Trustees have not produced all of the documents responsive to Freeman's

requests," or the "UMWA's production was extremely limited in scope," or "BCOA limited its production to documents relating to the 2007 Agreement," plainly do not satisfy the requirements of Rule 56(f). *See, e.g., Strang*, 864 F. 2d at 861 (party opposing summary judgment must state "concretely why she could not, absent discovery, present by affidavit facts essential to justify her opposition to [the movant's] summary judgment motion").

(d)    Speculative "Doubts" that BCOA and the UMWA have Produced All of the Documents Requested.    Paragraph 9 of the Levy declaration states that Freeman "doubts it has all of the documents reflecting the UMWA's intent in entering into the 2007 Agreement." Similarly, paragraph 10 states that Freeman "doubts it has all of the documents reflecting BCOA's intent in entering into the 2007 Agreement." These assertions plainly do not satisfy the requirements of Rule 56(f) because they are based purely on speculation, and they fail to identify specific facts that would create a triable issue. It is well-established that discovery should be denied if the party opposing summary judgment "merely desires to find something that might cast doubt on the [movant's] affidavits," or if plaintiff simply expresses the "'bare hope' of falling upon something" in discovery that might create a triable issue. *See Broaddrick v. Executive Office of the President,* 139 F.Supp.2d 55, 63-64 (D.D.C. 2001) (citations omitted).

(e)    Mere Assertions that Discovery has not been Completed.    In paragraphs 12, 13, 14, and 15 of the Levy declaration, it is stated that the Trustees have not yet responded to Freeman's interrogatories, that a 30(b)(6) deposition has been postponed pending review of documents, and that Freeman has served notices of deposition on two individuals and that Freeman "will likely need to depose further individuals."

Freeman's claim that it is entitled to relief under Rule 56(f) because discovery is incomplete is insufficient as a matter of law to stall consideration of the pending summary judgment motions. *See Broaddrick*, 139 F.Supp.2d at 63 ("merely stating that 'discovery is yet to commence' is insufficient to respond to a properly-supported motion for summary judgment.") Instead, Rule 56(f) requires Freeman to indicate what facts it intends to discover that would create a triable issue, why those facts are material to BCOA's motion for summary judgment, and why it cannot, absent discovery, present facts essential to justify its opposition to the pending motion. *Id*. (citations omitted).

Although Ms. Levy states in paragraph 14 of her declaration that Freeman has not had the opportunity to depose BCOA declarant Perkins or UMWA declarant Roberts in this action, she offers no specific reasons why Freeman needs to take these depositions in light of the sworn testimony that these declarants have already placed in the record. Merely stating a desire to depose witnesses is insufficient to justify Rule 56(f) relief. *See, e.g., Strang,* 864 F.2d at 861 (rejecting as too vague a mere "desire to test and elaborate affiants' testimony" in depositions). (internal quotations omitted). *See also Broaddrick* 139 F.Supp.2d at 63 (same).

4.      For these reasons, Freeman's motion under Rule 56(f) to deny or stay ruling on BCOA's motion for summary judgment, and the Levy declaration on which Freeman's motion is based, are inadequate and insufficient for denying or staying consideration of BCOA's well-supported motion for summary judgment. In addition, and although not essential to denying Freeman's motion under Rule 56(f), BCOA notes in the attached Declaration of Charles Groppe that many of the assertions and characterizations in the Levy declaration about the adequacy of BCOA's document production simply are not true. For example:

(a)      Paragraph 10 of the Levy declaration states that BCOA "did not produce Charles Perkins' files relating to any of the issues he addressed in his declaration filed along with BCOA's motion for summary judgment in this case." That is not true, because BCOA produced all non-privileged materials from Mr. Perkins' files regarding the calculation of the contribution rate to the 1974 Plan. *See* Groppe Declaration, ¶3.

(b)      Paragraph 10 of the Levy declaration states that BCOA did not produce, among other things, "any correspondence between Consol and BCOA on contribution rates." Again, this is not true because BCOA produced numerous non-privileged documents in its possession, custody and control reflecting communications between BCOA and Consol related to, among other things, contributions to the 1974 Plan. *See* Groppe declaration, ¶4.

(c)      Paragraph 8 of the Levy declaration suggests that the Trustees have not produced all of the documents in their possession regarding the negotiation of the evergreen clause, including documents produced by BCOA in the *Pittston* litigation. This statement is inaccurate and misleading because the Trustees have produced to Freeman all of the documents that BCOA produced in the evergreen litigation. *See* Second Declaration of Julia Penny Clark, ¶¶ 4, 6 (attached to the 1974 Pension Trust's reply brief in support of its motion for summary judgment.)

In summary, Freeman has not satisfied the requirements of Rule 56(f) and its motion to deny or stay ruling on the motions for summary judgment should be denied. BCOA has filed a motion for summary judgment addressing all of the legal questions at issue. The essential facts are undisputed. Freeman has failed to identify any specific triable facts that are essential for responding to BCOA's pending motion, which is now ripe for the Court to consider.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in BCOA's motion for summary judgment and its reply brief, BCOA respectfully requests that the Court should consider and grant its motion for summary judgment, and deny Freeman's motion to block consideration of summary judgment pursuant to Rule 56(f).

Respectfully submitted,

_____/s/_____

Peter Buscemi
D.C. Bar No. 269092
Stanley F. Lechner
D.C Bar No. 370986
Charles P. Groppe
D.C. Bar No. 464035

DATED: November 13, 2007          MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    (202) 739-3000
Fax:    (202) 739-3001
E-mail: pbuscemi@morganlewis.com
          slechner@morganlewis.com
          cgroppe@morganlewis.com

*Counsel for Defendant*
Bituminous Coal Operators' Association, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Charles P. Groppe, certify that, on behalf of Defendant BCOA, I served BCOA's

Opposition to Freeman United's Rule 56(f) Motion to Deny or Stay Ruling on Pending Motions

for Summary Judgment via the Court's ECF system (or First Class Mail, postage prepaid) upon:

> Paul M. Smith
> Jessica R. Amunson
> Jenner & Block LLP
> 601 13th Street, NW
> Suite 12 South
> Washington, DC 20005
> psmith@jenner.com
> jamunson@jenner.com
>
> Susan C. Levy, Esq.
> Jenner & Block LLP
> 330 N. Wabash Avenue
> Chicago, IL 60611
> slevy@jenner.com
>
> Gregory J. Ossi, Esq.
> Michael W. Robinson, Esq.
> Venable LLP
> 8010 Towers Crescent Drive, Suite 300
> Vienna, VA 22182
> gjossi@venable.com
> mwrobinson@venable.com
>
> ***Counsel for Plaintiff***
>
> John R. Woodrum
> Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
> 2400 N Street, NW
> Fifth Floor
> Washington, DC 20037
> john.woodrum@ogletreedeakins.com
>
> ***Counsel for Monterey Coal Company***
>
> Julia Penny Clark
> Andrew D. Roth
> Charlotte Garden
> Bredhoff & Kaiser P.L.L.C.
> 805 Fifteenth Street N.W.

Washington, DC  20005
JPClark@Bredhoff.com
aroth@bredhoff.com
CGarden@Bredhoff.com

***Counsel for Defendant UMWA 1974 Pension Plan
    and its Trustees***

Grant Crandall
Deborah Stern
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031
dstern@umwa.org

John R. Mooney
Mark J. Murphy
Richard C. Welch
Mooney, Green, Baker
   & Saindon, P.C.
1920 L Street, N.W.
Washington, DC 20036
jmooney@mooneygreen.com
mmurphy@mooneygreen.com
rwelch@mooneygreen.com

***Counsel for Defendant United Mine Workers
    of America***

on this 13th day of November, 2007.


Charles P. Groppe
*Counsel for Defendant*
*Bituminous Coal Operators' Association, Inc.*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: (202) 739-3000
Fax: (202) 739-3001
E-mail: cgroppe@morganlewis.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Holland, et al., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07-cv-490 (PLF) |
| ) | |
| Freeman United Coal Mining Company, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| Freeman United Coal Mining Company, ) | |
| ) | |
| Plaintiff, ) | Case No. 07-cv-1050 (PLF) |
| ) | |
| v. ) | |
| ) | |
| United Mine Workers of ) | |
| America, et al., ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF CHARLES P. GROPPE IN SUPPORT OF
### BCOA'S OPPOSITION TO FREEMAN UNITED'S RULE 56(F) MOTION

I, Charles P. Groppe, declare as follows:

1.      My name is Charles P. Groppe.  I am an attorney with the law firm of Morgan,

Lewis & Bockius LLP in Washington, D.C.  I am one of the lawyers representing the Defendant

the Bituminous Coal Operators' Association, Inc. ("BCOA") in Case Number 07-cv-1050.  I

make this declaration based upon my work on this case, as well as upon my knowledge and

review of documents that BCOA has produced to Plaintiff Freeman United Coal Mining

Company ("Freeman") during discovery.

2.      In support of its Rule 56(f) motion, Freeman has submitted the declaration of Susan C. Levy that, among other things, purports to describe alleged deficiencies in BCOA's production of documents to Freeman.  In her declaration, Ms. Levy states that "Freeman doubts [BCOA] has produced all of the documents reflecting BCOA's intent" in entering the 2007 NBCWA, and provides several subject areas in which Freeman claims no documents were produced. Levy Decl., ¶10.

3.      Among other things, Ms. Levy claims that "BCOA did not produce Charles Perkins' files relating to any of the issues he addressed in his declaration filed along with BCOA's motion for summary judgment in this case." *Id.*  This statement is not true, for BCOA produced all non-privileged materials that Mr. Perkins retained in his files surrounding the negotiation of the 2007 NBCWA as it related to the UMWA 1974 Pension Trust, including documents related to Mr. Perkins' analysis of the Trust's funding levels required to comply with the Pension Protection Act of 2006 ("PPA").

4.      In addition, Ms. Levy claims that "BCOA did not produce documents responsive to any agreement between it and Consol, including any correspondence between Consol and BCOA on contribution rates."  This statement also is not true, for BCOA produced numerous documents in its possession, custody and control that were sent back and forth between BCOA and Consol related to the UMWA Pension Trust.  This correspondence includes many, if not all, of the calculations that BCOA performed related to ensuring that the Trust's funding status remained above the 80% level in the PPA.

5.      Ms. Levy states that BCOA produced no documents regarding the UMWA's efforts to "coerce other coal companies" to adopt the 2007 NBCWA or documents "relating to the reaction of other coal companies" to the contribution rates set by the 2007 NBCWA.  These

statements presume that such documents exist and that they are in the possession, custody or control of BCOA.  No such documents have been located to date.

6.    Charles S. Perkins, Secretary-Treasurer of BCOA, stated in his Declaration submitted in support of BCOA's motion for summary judgment that BCOA and the United Mine Workers of America ("UMWA") negotiated contribution rates contained in the 2007 National Bituminous Coal Wage Agreement ("NBCWA") with the intent to fund the agreed-upon pension benefit increases contained in the 2007 NBCWA and to ensure that the UMWA 1974 Pension Trust complied with the obligations imposed by the PPA on multiemployer pension plans.  *See* Perkins Decl., ¶¶ 37, 39.  As Mr. Perkins noted, in order to reach agreement with the UMWA, comply with the PPA, and keep the 1974 Pension Trust from falling below the 80% funding level, BCOA and its independent actuaries, AON, analyzed the funding status of the Trust in light of the UMWA's bargaining demands.  Perkins Decl., ¶¶40, 42.

7.    On October 8, 2007, in response to Freeman's document requests in this case, BCOA produced several thousand pages of materials to Freeman that were bates labeled in the range from "BCOA 10001" to "BCOA 13628."  These documents, which were kept in the ordinary course of business at BCOA's offices in Washington, D.C., were determined to be responsive to Freeman's document requests.

8.    The documents produced to Freeman include numerous studies and analysis generated by BCOA and AON regarding the projected funding status of the Trust under various collective bargaining scenarios.  Among other things, these documents reflect that BCOA examined the impact various benefit increases would have on the Trust's funding status, as well as the effect various contribution rate increases would have on the Trust's funding status given various benefit increase proposals under consideration by BCOA and the UMWA.  These

studies, which were generated from approximately April and May 2006 through December 2006,

when BCOA and the UMWA reached agreement on the terms of the 2007 NBCWA,

demonstrate BCOA's efforts to ensure that whatever pension increases were negotiated with the

UMWA, the Trust's funding level would not fall below 80%.

9.      When making these calculations, BCOA relied on several assumptions regarding

the number of hours covered employees would work under the NBCWA that would generate the

contributions stream paid by employers into the 1974 Pension Trust.  In projecting this

anticipated contribution stream, BCOA did not rely merely on the projected hours of its 11

Operator Members, but instead based its projections on the anticipated hours that all employers

nationwide that were obligated to contribute to the Trust (including Freeman) would generate

over the next several years.

10.      During discovery, BCOA produced a document dated February 15, 2006, that

reflects these projections.  This document, which was created by Mr. Perkins, lists by name 53

UMWA signatory mines nationwide, the unique Mine Safety and Health Agency ("MSHA")

identification number for the facility, the most recent data regarding hours worked at the mine,

and BCOA's projections regarding the number of hours that would be worked at each of these

sites 5 years out from the present, 10 years out, and more than 10 years out.  This list of

"UMWA Signatory Mines" is national in scope, and includes non-BCOA mines in Alabama,

Illinois, Kentucky, Ohio, Pennsylvania, Utah, Virginia, and West Virginia.  This industry-wide

analysis was used in calculating the contribution rate for the 1974 Pension Trust.  This document

is bates labeled BCOA 10478 to BCOA 10481.

11.      Attached as Exhibit 1 to this Declaration is a true and correct copy of excerpts

from the Freeman United and UMWA Bituminous Coal Wage Agreement of 2003.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Charles P. Groppe
Charles P. Groppe

DATED: November 13, 2007

# EXHIBIT ONE

# FREEMAN UNITED
# COAL MINING COMPANY

## AND

# UNITED MINE WORKERS
# OF AMERICA

# BITUMINOUS COAL
# WAGE AGREEMENT
# OF 2003

# TABLE OF CONTENTS

Article I--ENABLING CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Article IA--SCOPE AND COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 Section (a) Work Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 Section (b) Exemptions Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 Section (c) Supervisors Shall Not Perform Classified Work . . . . . . . . . . . . . . . . . . . 3
 Section (d) Management of the Mines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 Section (e) Union's Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 Section (f) Application of This Contract to the Employer's Coal Lands . . . . . . . . . . . 3
 Section (g) Contracting and Subcontracting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 Section (h) Leasing, Subleasing and Licensing Out of Coal Lands . . . . . . . . . . . . . . 4
 Section (i) Construction Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 Section (j) Neutral Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Article II -- JOB OPPORTUNITY AND BENEFIT SECURITY (JOBS) . . . . . . . . . . . . . . . 5
 A. Non-Signatory Operations Of The Signatory Employer . . . . . . . . . . . . . . . . . . . 5
 B. Lessee-Licensee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
 C. Coordination Of Employment Obligations Under the JOBS Program . . . . . . . . . . 9
 D-1. Employer-Wide Panel Rights To Signatory Operations . . . . . . . . . . . . . . . . . . 9
 D-2. Exhaustion Of Employer Panel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 D-3. Monitoring Of Job Selections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 E. UMWA-Freeman Training and Education Fund . . . . . . . . . . . . . . . . . . . . . . . . . 10
  Section 1. Establishment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  Section 2. Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  Section 3. Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  Section 4. Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
 F. Skills Training . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  Section 1. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  Section 2. Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  Section 3. Skills Training Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
 G. UMWA-Freeman Labor Management Local Circumstances . . . . . . . . . . . . . . . . . 12
 H. UMWA-BCOA Resolution of Disputes Trust . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Article III--HEALTH AND SAFETY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
 Section (a) Right to a Safe Working Place . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
 Section (b) Federal Mine Safety and Health Act of 1977, As Amended . . . . . . . . . . . 13
 Section (c) Freeman UMWA Health and Safety Committee . . . . . . . . . . . . . . . . . . . 13
 Section (d) Mine Health and Safety Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
 Section (e) Access to the Mine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
 Section (f) Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
 Section (g) Safety Rules and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
 Section (h) Cooperation in Development of Mining Plans . . . . . . . . . . . . . . . . . . . . 16
 Section (i) Preservation of Individual Safety Rights . . . . . . . . . . . . . . . . . . . . . . . . 17
 Section (j) Physical Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Section (k) Minimum Age . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Section (l) Workers' Compensation and Occupational Disease . . . . . . . . . . . . . . . . . . . . 19
Section (m) Safety Equipment and Protective Clothing Allowance . . . . . . . . . . . . . . . 19
Section (n) Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section (o) Special Safety Problem Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section (p) Settlement of Health or Safety Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Article IV--WAGES AND HOURS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Section (a) Basic Work Week . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Section (b) Basic Work Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Section (c) Alternate Work Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Section (d) Saturday, Sunday and Premium Work . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Section (e) Standard Daily Wage Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Article V--HELPERS ON FACE EQUIPMENT IN UNDERGROUND MINES . . . . . . . . . . 25
Section (a) Assignment of Helpers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Section (b) Duties and Responsibilities of Helpers . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Section (c) Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Article VI--SHIFTS AND SHIFT DIFFERENTIALS . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section (a) Multiple Shifts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section (b) Hoisting of Coal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section (c) Shift Differentials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section (d) Working into the Next Shift . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section (e) Call-back . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section (f) Shift Rotation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Article VII--MINE COMMUNICATION COMMITTEES . . . . . . . . . . . . . . . . . . . . . . . . 28

Article VIII--STARTING TIME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Section (a) Shift Starting Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Section (b) Lowering Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Section (c) Safety and Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Section (d) Surface Facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Section (e) Changing Crews At The Face . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Article IX--ALLOWANCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Section (a) Bereavement Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Section (b) Jury Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Section (c) Reporting Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Section (d) Military Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Section (e) Personal or Sick Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Section (f) Family & Medical Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Article X--WAGE INCREASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Article XI--SICKNESS AND ACCIDENT BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Section (a) General Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Section (b) Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Section (c) Commencement and Duration of Benefits . . . . . . . . . . . . . . . . . . . . . . 35
    Section (d) Amount and Payment of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    Section (e) Filing of Claims for Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    Section (f) Structure and Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Article XII--HOLIDAYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    Section (a) Holidays Observed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    Section (b) Sunday Holidays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    Section (c) Monday Holidays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    Section (d) Pay for Holidays Worked . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    Section (e) Pay for Holidays Not Worked . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    Section (f) Holidays During Vacation Period . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    Section (g) Birthday Holidays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    Section (h) Holidays for Sick and Injured . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    Section (i) Time of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Article XIII--REGULAR VACATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    Section (a) Annual Vacation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    Section (b) Dates of Regular Vacation Period . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    Section (c) Staggered Regular Vacation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    Section (d) Qualifying Period and Amount of Payment . . . . . . . . . . . . . . . . . . . . 41
    Section (e) Floating Vacation Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    Section (f) Time of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Section (g) Obligation for Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Section (h) Work During Shutdown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Article XIV--GRADUATED VACATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Section (a) General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Section (b) Definition of Additional Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
    Section (c) Definition of Continuous Employment and Qualifying Period . . . . . . . . . . 45
    Section (d) Amount of Continuous Employment . . . . . . . . . . . . . . . . . . . . . . . . 45
    Section (e) Time of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    Section (f) Rate of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    Section (g) Scheduling and Pay in Lieu . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    Section (h) Sick and Injured Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Article XV--CHECKOFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Article XVI--TRAINING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
    Section (a) Priority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
    Section (b) Orientation for New Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
    Section (c) General Retraining Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    Section (d) Safety Training for Specific Job . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Section (e) Maintenance Training and Rate of Pay . . . . . . . . . . . . . . . . . . . . . 52
Section (f) General Training Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Section (g) Skills Enhancement Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

**Article XVII--SENIORITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Section (a) Definition of Seniority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Section (b) Reduction; Realignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Section (c) Layoff Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Section (d) Panels . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Section (e) Panel Custodians . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Section (f) Panel Members Accrue Seniority . . . . . . . . . . . . . . . . . . . . . . . . . 58
Section (g) Right to be Recalled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Section (h) Recall of Persons on Layoff Status . . . . . . . . . . . . . . . . . . . . . . . 58
Section (i) Bidding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section (j) Training for Vacancy Not Filled by Bidding . . . . . . . . . . . . . . . . . 61
Section (k) Transfer to Other Mines of Employer . . . . . . . . . . . . . . . . . . . . . 61
Section (l) Leave of Absence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
Section (m) Permanent and Temporary Supervisors . . . . . . . . . . . . . . . . . . . 62
Section (n) Shift Preference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
Section (o) Potential Job at Crown III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Article XVIII -- This Article Has Been Intentionally Omitted . . . . . . . . . . . . . . . . . . 63

Article XIX--CLASSIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Section (a) Working in Classification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Section (b)Temporary Assignments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Section (c) Protection Against Discrimination . . . . . . . . . . . . . . . . . . . . . . . . 64
Section (d) Compensation for Temporary Assignments . . . . . . . . . . . . . . . . . 64
Section (e) Classifications at Underground Mines . . . . . . . . . . . . . . . . . . . . . 64
    1.    Pay and Skills Improvement For Inby Employees . . . . . . . . . . . 64
    2.    Pay and Skills Improvement for Outby Employees . . . . . . . . . . . 65
    3.    Surface Jobs at Underground Mines . . . . . . . . . . . . . . . . . . . . . 65
Section (f)  Mine Examiner, Inby Classification, Outby Classification, and Repairman  65
Section (g) Employees Hired After January 16, 2003 . . . . . . . . . . . . . . . . . . . 66

Article XX--HEALTH AND RETIREMENT BENEFITS . . . . . . . . . . . . . . . . . . 66
Section (a) General Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66
Section (b) 1950 Pension Plan and Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
Section (c) 1974 Pension Plan and Trust and Employer Benefit Plan . . . . . . . . . . . . 67
Section (d) Contributions by Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
Section (e) Responsibilities and Duties of Trustees . . . . . . . . . . . . . . . . . . . . 71
Section (f) Audits, Reports and Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
Section (g) Administration of Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
Section (h) Guarantee of 1950 and 1974 Plans and Trusts . . . . . . . . . . . . . . . . 73
Section (i) Medical Reimbursement Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
GENERAL DESCRIPTION OF THE HEALTH AND RETIREMENT BENEFITS . . . 74

(1) PENSIONS FOR MINERS RETIRED UNDER THE 1950 PENSION PLAN:
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
(1A)    1950 Widows' Pension: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
(2)     Pensions for Miners Who Retired under the 1974 Pension Plan Prior to the
        Effective Date: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
(3)     Pensions for Miners Who Retire on or after the Effective Date: . . . . . . . 78
(4)     Signatory Service: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
(5)     Pensions and Health Care for Disabled Miners: . . . . . . . . . . . . . . 81
(6)     Pensions for Surviving Spouses: . . . . . . . . . . . . . . . . . . . . . . . . . 82
(6A)    Pre-retirement Survivor's Pension: . . . . . . . . . . . . . . . . . . . . . . . . 83
(7)     Deferred Vested or Special Pensions: . . . . . . . . . . . . . . . . . . . . . . 84
(7A)    Pension Bonuses: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87
(8)     Life and Accidental Death and Dismemberment Benefits: . . . . . . . . . 87
(9)     Pensioner's Death Benefits: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
(10)    Health Care: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
(11)    Vision Care: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
(12)    Health Care Cost Containment: . . . . . . . . . . . . . . . . . . . . . . . . . . 96
(13)    National Health Care: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

Article XXA --DENTAL PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

Article XXB--UMWA CASH DEFERRED SAVINGS PLAN OF 1988 . . . . . . . . . . . . . . . . . 97
        Section (a) General Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97
        Section (b) Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
        Section (c) Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
        Section (d) Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
        Section (e) Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
        Section (f) Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
        Section (g) Plan and Trust Provisions . . . . . . . . . . . . . . . . . . . . . . . . 100

Article XX-C--NEW FREEMAN UNITED RETIREMENT PROGRAM . . . . . . . . . . . . . . . 100
        Section (A) General Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
        Section (B) Pension Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
        Section (C) Survivor Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
        Section (D) Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103

Article XXI--SURFACE MINES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
        Section (a) Parking Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
        Section (b) Manning of Surface Mining Equipment . . . . . . . . . . . . . . . . . . 105
        Section (c) Eating Place . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
        Section (d) Cabs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
        Section (e) Special Health and Safety Problems in Surface Mines . . . . . . . . . 106
        Section (f) Toilets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
        Section (g) Swing Shift . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
        Section (h) Leasing of Employees' Vehicles . . . . . . . . . . . . . . . . . . . . 108
        Section (i) Production and Processing of Coal at Surface Mines . . . . . . . . . . 108

Article XXII--MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
    Section (a)  Bathhouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
    Section (b)  Access Roads . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
    Section (c)  Parking Facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    Section (d)  Bulletin Boards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    Section (e)  Coke and Cleaning Plants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    Section (f)  Compulsory Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    Section (g)  House Coal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    Section (h)  House Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    Section (i)  Attendance Control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    Section (j)  Memorial Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111
    Section (k)  Closing Following Fatal Accident . . . . . . . . . . . . . . . . . . . . . . . . . . . 111
    Section (l)  New Machinery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
    Section (m)  Pay Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
    Section (n)  Lunches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
    Section (o)  Portals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
    Section (p)  Tools . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
    Section (q)  Tramming . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
    Section (r)  Local Union Meeting Place . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
    Section (s)  Bonus Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

Article XXIII--SETTLEMENT OF DISPUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
    Section (a)  Mine Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
    Section (b)  District Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
    Section (c)  Grievance Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
    Section (d)  Ten Day Limitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
    Section (e)  Earnest Effort to Resolve Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . 116
    Section (f)  Employee's Right to Presence of Member of Mine Committee . . . . . . . . 117
    Section (g)  Right of Grievant to be Present . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
    Section (h)  Finality of Decision or Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
    Section (i)  Exclusion of Legal Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
    Section (j)  Waiver of Time Limits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
    Section (k)  Prior Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117

Article XXIV--DISCHARGE PROCEDURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
    Section (a)  Just Cause Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
    Section (b)  Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
    Section (c)  Suspension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
    Section (d)  Immediate Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
    Section (e)  Regular Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119
    Section (f)  Compensation for Lost Earnings . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

Article XXV--DISCRIMINATION PROHIBITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

Article XXVI--DISTRICT AGREEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

Section (a)  New Districts ................................................... 119
Section (b)  Prior Practice and Custom ...................................... 119
Section (c)  Protective Wage Clause ........................................ 120
Section (d)  Approval of District Agreements ................................ 120

Article XXVII--MAINTAIN INTEGRITY OF CONTRACT AND RESORT TO COURTS . 120

Article XXVIII--SEVERABILITY CLAUSE ..................................... 120
Section (a)  General Rule ................................................... 120
Section (b)  Exception ...................................................... 121

Article XXIX--RATIFICATION AND TERMINATION OF THIS AGREEMENT ........ 121

TABLE I-A ................................................................. 122

TABLE I-B ................................................................. 123

Age 62 Pension ............................................................ 124

TABLE I-C ................................................................. 125

TABLE II .................................................................. 126

APPENDIX A PART I ......................................................... 127

APPENDIX A PART II ........................................................ 128

APPENDIX A PART III ....................................................... 129

APPENDIX B PART I ......................................................... 130

APPENDIX B PART II ........................................................ 133

APPENDIX B PART III ....................................................... 135

APPENDIX C ALTERNATIVE SCHEDULES ..................................... 138

INDEX ..................................................................... 144

Except as otherwise specifically set forth in this Article, it is agreed that the Trusts referred to in this Article are irrevocable Trusts created pursuant to, and within the scope of, Section 302(c) of the Labor-Management Relations Act, 1947, and shall endure as long as the purposes for their creation shall exist.

## Section (b) 1950 Pension Plan and Trust

(1) The United Mine Workers of America 1950 Pension Trust ("1950 Pension Trust") is incorporated by reference and made a part of this Agreement. The United Mine Workers of America 1950 Pension Plan (the "1950 Pension Plan") is incorporated by reference and made a part of this Agreement. The pensions to be paid from the 1950 Pension Trust are as set forth in the 1950 Pension Plan.

(2) Pursuant to the requirements of the Coal Act, the United Mine Workers of America 1950 Benefit Plan and Trust ("1950 Benefit Trust") and the United Mine Workers of America 1974 Benefit Plan and Trust (the "1974 Benefit Trust") were merged into the United Mine Workers of America Combined Benefit Fund (the "Combined Fund"). The Combined Fund is governed by the terms of the Coal Act, and is not maintained pursuant to this Article.

(3) Upon the discharge of all its obligations, any remaining assets in the 1950 Pension Trust shall, upon termination of such Trust, be transferred to the 1974 Pension Trust.

## Section (c) 1974 Pension Plan and Trust and Employer Benefit Plan

(1) The United Mine Workers of America 1974 Pension Trust ("1974 Pension Trust") is incorporated by reference and made a part of this Agreement. The pensions to be paid from the 1974 Pension Trust are as set forth in the United Mine Workers of America 1974 Pension Plan ("1974 Pension Plan"), which is incorporated by reference and made a part of this Agreement. This Plan is a continuation of the pension program of the 1950 Fund and was effective December 6, 1974.

(2) Freeman shall establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other non-pension benefits for its Employees covered by this Agreement as well as certain pensioners under the 1974 Pension Plan and Trust whose last signatory classified employment was with Freeman, who are not eligible to receive benefits from a plan maintained pursuant to the Coal Act and who are currently enrolled and receiving retiree medical coverage under Freeman's Employer Benefit Plan as of December 19, 1998. Freeman shall provide such non-pension benefits for these certain pensioners until their participation in the New Freeman United Retirement Program. The benefits provided by Freeman to its eligible Participants pursuant to such plan shall be guaranteed during the term of this Agreement by Freeman at levels set forth in such plan. The plan established pursuant to this subsection is incorporated by reference and made a part of this Agreement, and the terms and conditions under which the health and other non-pension benefits will be provided under such plan is as to be set forth in such plan.