**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Michael H. Holland, Micheal W. Buckner, B.V. Hyler and Steven F. Schaab as Trustees of the United Mine Workers of America 1974 Pension Trust, <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>Freeman United Coal Mining Company, et al., <br><br>　　　　　Defendants. | Case No. 07-cv-00490 (PLF/AK) |
| Freeman United Coal Mining Company, <br><br>　　　　　Plaintiff, <br><br>　v. <br><br>United Mine Workers of America, et al., <br><br>　　　　　Defendants. | Case No. 07-cv-01050 (PLF/AK) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**OF FREEMAN UNITED COAL MINING COMPANY IN OPPOSITION TO**
**BITUMINOUS COAL OPERATORS' ASSOCIATION'S MOTION TO COMPEL**

The principal issue in this case is whether the 2007 Agreement between BCOA/Consol and the United Mine Workers of America ("UMWA") is a "successor agreement" within the meaning of the evergreen clause. Freeman's own documents have no conceivable relevance to that issue or any other issue because (1) it was not involved in the negotiation of the evergreen clause in 1978, and (2) it was not involved in the negotiation of the 2007 Agreement, which was solely negotiated by UMWA and BCOA/Consol. In fact, BCOA unequivocally admitted that it did not even tell the other coal companies, including Freeman, that UMWA and BCOA/Consol

1

were negotiating new contribution rates in the 2007 NBCWA.  *See* Perkins Dep. 219 (Feb. 8, 2008) ("Q:  At any time prior to the execution of the 2007 NBCWA, did the BCOA notify any of its former members that it was negotiating new contribution rates?  A:  I'm not aware of any communication.").

Despite the irrelevance of Freeman's own documents to any issue in this case, on December 18, 2007, BCOA propounded 35 requests for production and 36 requests for admission on Freeman.  *See* Exhibit 1 to BCOA Motion.  In general, BCOA sought information reflecting Freeman's views as to whether or not it was bound to the 2007 Agreement under the evergreen clause.  However, under *United Mine Workers of America 1974 Pension Trust v. Pittston*, 782 F. Supp. 658, *aff'd*, 984 F.2d 469 (D.C. Cir. 1993) ("*Pittston*"), what Freeman may or may not have believed or said about the evergreen clause is completely immaterial to any issue in this case.  In *Pittston*, the Court held that in determining the meaning of the evergreen clause what is relevant is the *intent of the parties involved in negotiating the clause* – BCOA and UMWA.  Evidence from other coal companies who may or may not be bound by the clause was utterly irrelevant.  *See* 782 F. Supp. at 664-65.  And, in discovery in this case, the opposing parties have admitted the obvious:  that in 1978 the negotiators of the evergreen clause did not even discuss whether the evergreen clause would still apply if, as is now the case, BCOA represented only one coal company.  *See* Pierce Dep. 66 (Jan. 7, 2008) ("Q:  Now, in negotiating the evergreen clause to your knowledge did anyone discuss whether it would still apply if the BCOA only represented one company? A:  I never heard any such discussion.").

Although the vast majority of BCOA's requests sought materials that are utterly irrelevant, Freeman provided its responses and objections to these requests on January 18, 2008, as required by the Federal Rules of Civil Procedure.  *See* Exhibit 2 to BCOA Motion.  In its

response, Freeman advised BCOA that it would be producing documents responsive to its requests as these documents were located.

On January 25, 2008, BCOA wrote to Freeman regarding its responses to its requests for production and other discovery-related issues. *See* Exhibit 3 to BCOA Motion. Freeman responded in part on February 1, 2008 and stated that it would be responding to the remainder of BCOA's letter "shortly." Freeman then provided a comprehensive response to BCOA's letter on February 6, 2008 (attached as Exhibit 6 to BCOA Motion) – the date by which BCOA had requested a response (*see* Exhibit 5 to BCOA Motion).

Freeman deposed various BCOA, UMWA, and Consol witnesses on February 7, 8, 12, 13, 14, and 15, 2008. Although counsel for BCOA attended and sat across from counsel for Freeman at every one of these depositions, BCOA's counsel did not say a single word to Freeman's counsel about Freeman's February 6, 2008, letter or ask to discuss any issues with regard to Freeman's responses to BCOA's requests for production. Nor did BCOA give Freeman any indication that it was in urgent need of Freeman's production of documents. Indeed, Freeman heard nothing more from BCOA about its responses to BCOA's requests for production until BCOA filed this motion to compel. BCOA offers no excuse at all for its failure to confer with Freeman prior to filing this motion other than its self-serving and unilateral determination that such a conference would have been "futile." What is actually "futile" is filing a motion to compel on a Saturday evening for documents that the opposing party intends to provide during working hours on the first business day following that Saturday. Freeman provided documents responsive to BCOA's requests on February 18 and 19 – before the end of fact discovery – thereby mooting the vast majority of BCOA's procedurally improper motion. A simple phone call would have rendered this motion unnecessary.

## **ARGUMENT**

**I.     BCOA'S MOTION IS MOOT AND SUBSTANTIVELY MERITLESS.**

BCOA's motion has been largely mooted by Freeman's production of documents responsive to BCOA's requests on February 18 and 19, 2008. The remainder of the motion is substantively meritless.

<u>First</u>, BCOA asks this Court to preclude Freeman from using any material that it has not provided to BCOA. But Freeman has no intention of using any material it has not provided to BCOA or that is not already in the possession of BCOA and the opposing parties. As discussed above, given the Court's holding in *Pittston*, evidence of Freeman's interpretation of the evergreen clause or the 2007 Agreement is completely immaterial to any issue and BCOA's requests are for largely irrelevant materials. *See* 782 F. Supp. at 664-65. However, Freeman agreed to provide documents (and in fact did provide documents) in response to those few of BCOA's requests for production that were even arguably remotely relevant to the issues in this case. Freeman has no intention of using documents it has not provided to BCOA or that are not already in the possession of BCOA or the opposing parties. Thus, BCOA's "use preclusion" argument is of no moment.

<u>Second</u>, BCOA complains about Freeman's responses to several specific requests. As detailed below, those complaints have either been mooted by Freeman's production of documents to BCOA or are substantively meritless.

    1.    <u>Document Requests 7, 8, 9, 10, 11, 12, and 20</u> – As it promised in its February 6, 2008, letter to BCOA, on February 18 and 19, 2008, Freeman produced non-privileged documents responsive to requests 10, 11, 12, and 20 to BCOA. BCOA's motion is therefore moot with regard to these requests. Also as promised in its February 6, 2008, letter to BCOA, Freeman has searched for documents responsive to requests 7, 8, and 9, and consistent with its obligations under the Federal Rules of Civil Procedure, and in particular its obligations under

4

       Rule 26(e), Freeman hereby states that it has not located any documents responsive to these requests.

2. <u>Document Requests 1 and 2</u> – As it promised in its February 6, 2008, letter to BCOA, on February 18, 2008, Freeman produced to BCOA those portions of the Asset Purchase Agreement between Freeman and Springfield that concern Springfield's contractual obligations to the UMWA 1974 Pension Plan as Freeman's successor. BCOA's motion is therefore moot with regard to this request. BCOA's further argument that it is entitled to "[a]ll documents concerning the sale of Freeman's coal mining operations to the Springfield Coal Company LLC in August 2007," BCOA RFP No. 1, in order "to explore Freeman's representations made about its obligation to the 1974 Pension Trust during negotiations over the sale," BCOA Mem. at 7, makes no sense. What Freeman may or may not believe about its obligations to contribute to the Trust at the rates set in the 2007 Agreement, and what it may or may not have conveyed to Springfield regarding its belief have no bearing whatsoever on whether or not Freeman is *obligated* to contribute to the Trust, which is the issue in this case. As Freeman has repeatedly argued, it is obligated to contribute to the Trust only insofar as the 2007 Agreement is a "successor agreement" to prior NBCWAs, and its own intent is irrelevant as the *Pittston* court already held. Freeman therefore stands on its objection to BCOA's overbroad request for "[a]ll documents concerning the sale of Freeman's coal mining operations to the Springfield Coal Company LLC in August 2007."

3. <u>Document Request No. 3</u> – In its February 6, 2008, letter to BCOA, Freeman requested further clarification from BCOA regarding its request for "[a]ll documents concerning Freeman's communications after January 1, 1997 with other bituminous coal companies regarding BCOA." BCOA provided no further clarification until filing this motion to compel. In its motion, BCOA asserts that this information is relevant to whether Freeman considered BCOA its "agent" from 1997 to the present. Again, however, what Freeman may or may not have said to other coal companies regarding BCOA over the past ten years is not relevant to any claim or defense in this litigation. First, the genesis of the agency relationship in question via the evergreen clause precedes Freeman's withdrawal from BCOA in 1997. Second, the D.C. Circuit has already determined that for purposes of "rais[ing] the contribution rate" for those companies bound by that rate, BCOA acts as the "employers' agent." *United Mine Workers of America 1950 Ben. Plan and Trust v. BCOA*, 898 F.2d 177 (D.C. Cir. 1990). Accordingly, Freeman's communications with other coal companies from 1997 to present regarding this issue are beside the point.

4. <u>Document Request No. 24</u> – In both its response to this request and its February 6, 2008, letter to BCOA, Freeman provided BCOA with an extensive list of documents that Freeman believed to be already in BCOA's possession that discuss and/or evidence the agency relationship between BCOA and Freeman. Freeman stated that if BCOA was not in possession of those documents, Freeman

5

would supply them. BCOA never responded to Freeman's offer, and its motion does not contest that it is in possession of the documents Freeman listed. Nonetheless, BCOA demands that Freeman amend its discovery responses to state that "no additional documents" exist. Consistent with its obligations under the Federal Rules of Civil Procedure, and in particular its obligations under Rule 26(e), Freeman hereby states that it is not aware of any additional documents responsive to this request.

5. <u>Document Requests No. 5 and 6</u> – Request No. 5 seeks "[a]ll correspondence and communications between Freeman and the UMWA concerning Freeman's participation in the 1974 Pension Trust as agreed to in the 1998 and 2003 Freeman Agreements" and Request No. 6 seeks "[a]ll documents concerning Freeman's agreement to incorporate the 1974 Trust documents into its 1998 and 2003 Agreements with the UMWA." In its February 6, 2008, letter to BCOA, Freeman stated that BCOA had failed to articulate why this material is relevant. There is no issue in this litigation with regard to Freeman's participation in the 1974 Trust under the terms of the 1998 and 2003 Freeman Agreements. The issue in this litigation is whether Freeman's participation in the Trust (and the evergreen clause in particular) obligate Freeman to make contributions pursuant to the terms of the 2007 Agreement between UMWA and BCOA/Consol. In its motion, BCOA has provided no further explanation or response to Freeman's objection. Accordingly, Freeman stands on its objections to these requests.

6. <u>Document Request Nos. 18, 19, 21, 22, 25, 26, 27, and 28</u> – In both its response to this request and its February 6, 2008, letter to BCOA, Freeman provided BCOA with an extensive list of documents that Freeman believed to be already in BCOA's possession and are responsive to each of these requests. Freeman stated that if BCOA was not in possession of those documents, Freeman would supply them. BCOA never responded to Freeman's offer, and its motion does not contest that it is in possession of the documents Freeman listed. Nonetheless, BCOA demands that Freeman amend its discovery responses to state that it has no other documents responsive to these requests. Consistent with its obligations under the Federal Rules of Civil Procedure, and in particular its obligations under Rule 26(e), Freeman hereby states that it is not aware of any additional documents responsive to these requests.

Thus, the specific objections raised in BCOA's motion to compel have either been mooted by Freeman's production of documents or are meritless.

## II. BCOA'S MOTION WAS FILED IN VIOLATION OF THE FEDERAL AND LOCAL RULES AND THIS COURT'S SCHEDULING ORDER.

BCOA's motion was filed with utter disregard for the requirements of the Federal Rules of Civil Procedure and the Local Rules, as well as the Court's scheduling order in this case.

First, BCOA failed to comply with the duty to confer requirements of Local Rule 7(m). This Court has made crystal clear that "[f]ailure to comply with the duty to confer requirement set forth in these rules is grounds for dismissing a motion to compel," and that "compliance with the duty to confer requirement necessitates *something more than an exchange of letters or a chain of e-mail correspondence*; if the moving party does not discuss the anticipated motion with opposing counsel '*in person or by telephone*,' then she has not followed the rule and the court may dismiss her motion."  *Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 31 (D.D.C. 2007); *see also U.S. ex rel Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 528 (D.D.C. 2006) (holding that parties who generated "an abundance of paper in corresponding about the underlying discovery disputes" but did not "discuss[ ] the motions in person or by phone" did not comply with Local Civil Rule 7(m)); *In re ULLICO Inc. Litigation*, 237 F.R.D. 314, 316-17 (D.D.C. 2006) (there is "no substantial justification for filing a nondispositive motion" in any "way that clearly violates the local rules of this court").  Despite multiple opportunities, BCOA never consulted with counsel for Freeman either in person or by telephone regarding this motion.  Thus, BCOA's motion should be dismissed out of hand for its failure to comply with Local Rule 7(m).

Second, BCOA makes no certification in its motion (nor could it) that it "in good faith conferred or attempted to confer with the person or party failing to make disclosure."  Fed. R. Civ. P. 37(a)(1).  Thus, BCOA's motion also should be denied for its failure to confer in good faith with Freeman as required by Rule 37.  *See, e.g., Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 13 (D.D.C. 2002) (denying defendant's motion after finding that there is "no indication from the motions, however, that the defendant made a good faith effort to resolve the instant discovery dispute before resorting to the court for its assistance in resolving the issue").

<u>Finally</u>, BCOA's motion should be denied for its failure to comply with the Court's scheduling order in this case, which explicitly directed that "*[c]ounsel shall not file a discovery motion without a prior conference with opposing counsel.*"  Docket 42 ¶ 5 (emphasis added).

Therefore, Freeman should be awarded its reasonable fees and costs for responding to this motion under Rule 37(a)(5)(b) because BCOA's motion was not "substantially justified." Fed. R. Civ. P. 37(a)(5)(b). Despite sitting across the table from each other for six days as part of the deposition schedule in this case, BCOA did not even notify Freeman that BCOA was contemplating a motion to compel. Moreover, BCOA's motion is substantively meritless in seeking to compel production of documents that either (1) Freeman has already produced; or (2) are completely irrelevant and unrelated to this case. Therefore, "[t]o force the additional burden and cost upon [Freeman] of opposing a motion to compel . . . would indeed be unjust." *Alexander v. F.B.I.*, 186 F.R.D. 144, 147 (D.D.C. 1999).

## CONCLUSION

For the foregoing reasons, Freeman respectfully requests that this Court deny BCOA's motion to compel and award Freeman its reasonable costs and attorneys' fees for responding to the motion.

February 20, 2008                                    Respectfully submitted,

                                                                           /s/ Susan C. Levy
                                                    Paul M. Smith
                                                    DC Bar No. 358870
                                                    Jessica Ring Amunson
                                                    DC Bar No. 497223
                                                    JENNER & BLOCK LLP
                                                    601 13th Street, NW
                                                    Washington, DC 20005
                                                    Tel: (202) 639-6000
                                                    Fax: (202) 661-4993
                                                    psmith@jenner.com
                                                    jamunson@jenner.com

Susan C. Levy (*pro hac vice*)
Daniel J. Winters (*pro hac vice*)
JENNER & BLOCK LLP
333 North Wabash Avenue
Chicago, IL 60611
Tel: (312) 923-2772
Fax: (312) 840-7772
slevy@jenner.com
dwinters@jenner.com

Gregory J. Ossi
DC Bar No. 460243
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Tel: (703) 760-1600
Fax: (703) 812-8949
gjossi@venable.com

***Counsel for Freeman United Coal Mining Company***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2008, I served the foregoing via the Court's ECF system, which will provide notification to all counsel of record in these consolidated cases.

Respectfully submitted,

__/s/ Jessica Ring Amunson_____
Jessica Ring Amunson
DC Bar No. 497223
JENNER & BLOCK LLP
601 13th Street, NW
Washington, DC 20005
Tel: (202) 639-6000
Fax: (202) 661-4993
jamunson@jenner.com